2016 IL App (2d) 121156-B
No. 2-12-1156
Opinion filed June 30, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07-CF-2986 |
| MARK A. DOWNS, | ) ) ) | Honorable Timothy Q. Sheldon, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Hutchinson and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    This case returns to us on remand from the supreme court following its reversal of our decision in the second appeal of defendant, Mark A. Downs. In the first appeal, *People v. Downs*, 2012 IL App (2d) 100755-U (*Downs I*), defendant appealed the trial court's dismissal, during the initial stage of a *Krankel* hearing (see People v. Krankel, 102 Ill. 2d 181 (1984)), of his posttrial claims of ineffective assistance of counsel. We reversed the dismissal because the trial court erroneously converted the *Krankel* preliminary inquiry into an adversarial hearing on the merits, in which the State actively participated and defendant was required to represent himself without benefit of counsel. The trial court had indicated that some of defendant's allegations raised issues of possible neglect by his trial counsel. We remanded the cause,

directing the trial court to appoint counsel and to continue the case from that point. *Downs I*, 2012 IL App (2d) 100755-U, ¶¶ 50-51.

¶ 2     On remand, the trial court appointed counsel (*Krankel* counsel) and held a *Krankel* hearing. Counsel adopted only a general claim of ineffective assistance of trial counsel and declined to adopt any of defendant's specific allegations. The trial court again dismissed defendant's allegations, and defendant again appealed.

¶ 3     In this second appeal, defendant contended that *Krankel* counsel was ineffective in conducting the second *Krankel* hearing. Defendant also, for the first time in the case, challenged the trial court's definition of proof beyond a reasonable doubt in response to the jury's question to the court: "What is your definition of reasonable doubt, 80%, 70%, 60%?" We addressed the reasonable-doubt issue and laid the *Krankel* issue to the side. *People v. Downs*, 2014 IL App (2d) 121156, ¶ 15 (*Downs II*). In *Downs II*, we held that the trial court erred in responding to the jury's question and that there was a reasonable likelihood that defendant had been convicted on proof less than beyond a reasonable doubt. *Id.* ¶ 31. The State appealed, and our supreme court reversed, holding that the trial court appropriately responded to the jury's question and reiterating that a court should refrain from attempting to define reasonable doubt. *People v. Downs*, 2015 IL 117934, ¶¶ 24, 32 (*Downs III*). The supreme court then remanded the cause to this court to allow us to consider the *Krankel* issue. *Id.* ¶ 34.

¶ 4     Accordingly, before us now, defendant appeals the conduct of the second *Krankel* hearing. Defendant argues that *Krankel* counsel was ineffective because he abdicated his role to represent defendant when he abandoned defendant's specific claims of ineffective assistance of trial counsel. We reverse and remand the cause.

¶ 5                                    I. BACKGROUND

¶ 6     In *Downs I*, we provided a full account of the events underlying the case. In *Downs II*,

we summarized those events. In light of both of these factual summaries, we need not reprise the substantive facts of the offense; instead, we will provide an outline of the evidence as necessary and focus on the procedures now at issue.

¶ 7    In April 2009, defendant was convicted of the first-degree murder (720 ILCS 5/9-1(a)(1) (West 1996)) of six-year-old Nico Contreras. Early in the morning of November 10, 1996, Nico was shot while he slept. The intended target was Robert Saltijeral, Nico's uncle, who was a member of the Latin Home Boys gang. The shooter was Ruben Davila, accompanied by defendant and Elias Diaz, who were members of the Almighty Ambrose gang. A week before Nico's death, Davila's car had been shot up by Latin Home Boys gang members; Davila and defendant were tasked by the Ambrose gang to shoot Saltijeral to pay back the Latin Home Boys for shooting at Davila. Davila balked and, according to Davila's testimony, defendant shot at the house, ultimately killing Nico.

¶ 8    Davila and Alejandro Solis testified at defendant's trial. Davila received an incredibly lenient plea deal to testify against defendant. Davila admitted to the murder of Jose Yepiz, which occurred a few weeks after Nico's murder, along with a number of other shootings. Davila was charged only with aggravated discharge of a firearm in the Yepiz murder and received a recommendation to be placed in a boot camp program or, if he failed to satisfactorily complete the program, to receive an eight-year sentence. Additionally, Davila received nearly $39,000, paid to him or paid on his behalf for expenses and to support his family in Mexico.

¶ 9    Solis denied that he received a *quid pro quo* deal in exchange for his testimony; rather he testified that he cooperated because he believed that it was the right thing to do and it cleared his conscience. Nevertheless, even in the absence of an explicit deal, a 2½-year term of imprisonment was vacated and Solis was resentenced to a 30-month term of probation instead. In addition, Solis received $5,000 to pay a child support arrearage and allow his release from

incarceration, and he was paid $3,200 for working as an informant, some of which was paid for information relating to Nico's murder.

¶ 10    Based on Davila's and Solis's descriptions of Nico's murder, defendant was convicted of the murder.[1]  Following the verdict, but before the sentencing, defendant filed two *pro se* motions alleging that his trial counsel had provided ineffective assistance.  Defendant's second motion incorporated all of the allegations from the first motion and added more allegations.  Defendant's second motion was 60 pages in length and contained 34 allegations.  On July 31, 2009, and pursuant to *Krankel*, the trial court appointed *Krankel* counsel, but it had not yet held a preliminary inquiry into the factual bases of defendant's allegations.  On October 27, 2009, *Krankel* counsel filed a second amended motion on defendant's behalf, adopting five of defendant's *pro se* allegations.  On November 25, 2009, defendant filed a third *pro se* motion, alleging 13 additional claims of ineffective assistance.

¶ 11    Among the five claims that *Krankel* counsel adopted were two claims pertinent here: (1) trial counsel ignored or refused defendant's request to choose a bench trial; and (2) trial counsel failed to sufficiently investigate and present defendant's alibi defense.  At a hearing on *Krankel* counsel's motion, the trial court, on its own initiative and purportedly based on a recent Rule 23 order in another case, reconsidered the procedure it was going to follow.  The trial court believed that, in conducting the preliminary inquiry into the factual bases of defendant's allegations, it

---

[1] During the jury's deliberations, it first requested the transcripts of four witnesses' testimony; it later asked the trial court how it defined reasonable doubt: "80%[,] 70%[, or] 60%?"  The trial court responded to the reasonable-doubt question, but none of the transcripts had been provided before the jury reached its verdict.  *Downs III* resolved the issue arising from the reasonable-doubt question, and we note these circumstances for completeness.

was required to first allow the defendant to discuss his allegations, without legal representation. The trial court thus rescinded *Krankel* counsel's appointment and ordered defendant to present his *pro se* allegations. In the procedure that followed, defendant would first read and elaborate on an allegation, trial counsel was invited to comment and argue against defendant's allegation, the State was invited to offer its argument in support of trial counsel and against defendant's allegation, and defendant was given an opportunity to have the last word in support of his allegation. In this fashion, the trial court thus converted the preliminary inquiry into an adversarial hearing on the merits of each allegation, during which defendant was not allowed to have legal representation.

¶ 12   Regarding the bench-trial allegation, defendant averred that, on the first and second days of the jury trial, defendant informed trial counsel that he wanted to dismiss the jury and proceed with a bench trial for the balance of the proceedings. Defendant alleged that trial counsel completely ignored him, and the jury trial proceeded to completion notwithstanding defendant's expressed wishes. The trial court sought trial counsel's commentary on the allegation. Trial counsel explained that he acknowledged defendant's requests to convert the jury trial into a bench trial and then proceeded to talk defendant out of his desire on each day. Trial counsel noted that Diaz had been convicted by the same trial court at a bench trial and that defendant's jury trial involved essentially the same evidence that had been presented during Diaz's bench trial. Trial counsel believed that it was extremely likely that, based on the same evidence, the trial court would return a guilty finding if the proceedings were converted into a bench trial. Trial counsel explained this to defendant and defendant seemed to acquiesce to this reasoning. Trial counsel noted that he believed that, had he not tried to talk defendant out of converting the proceedings into a bench trial, he would have been ineffective. Trial counsel also explained that defendant was never "insistent" about converting the proceedings into a bench trial; for his part,

defendant stated that he was "almost 100 percent certain" that he wanted a bench trial. The trial court specifically dismissed this allegation, holding:

> "defendant has argued that it should have been a bench trial; and his attorney countered by saying the Court tried Elias Diaz at bench trial and found Elias Diaz guilty on a bench trial. Defense trial strategy was sound in that this Court had already heard that evidence regarding Elias Diaz and found the evidence credible and believable and relevant and found Elias Diaz guilty.
>
> It would have been bad trial strategy to go and retry [defendant] in front of this Court in that this Court had already found Elias Diaz guilty. That is trial strategy. The Court agrees with that as sound trial strategy."

¶ 13    Regarding the alibi allegations, defendant claimed that he was at work at the time of the murder. According to defendant, his sister (Patricia Serrano) and his brother (Chris Downs) were willing to testify in support of defendant's alibi. Patricia had averred that both defendant and Chris were living with her on the date of the murder. She recalled driving them to work at Borg-Warner in West Chicago during the holiday season, where both brothers were working in temporary seasonal positions. She further averred that the brothers' shifts began at 6 p.m. and ended at 6 a.m. and that their usual workdays coincided with the date of the murder. In addition, she particularly remembered the date of the murder, because on November 11, the day following the murder, she and her brothers traveled to Iowa and spent the ensuing week there. She also averred that trial counsel did not investigate her alibi information. Trial counsel explained that he contacted Borg-Warner looking for employment records from the time around the date of the murder. Trial counsel explained that he spoke to two different lawyers at Borg-Warner, which he believed to be a benefit, because the two different people would approach the issue differently and possibly turn up the information he was seeking. However, trial counsel consistently learned

that records for defendant were not available, because the company simply did not keep records for temporary employees for such a length of time. Trial counsel also stated that no alibi had been developed contemporaneously with the offense and he believed that, as a matter of strategy, an alibi developed 10 years later would appear to be fabricated and harm defendant's case. The State chimed in, noting that, during the initial murder investigation, defendant was questioned and did not raise a work alibi; instead, defendant admitted that he was with Davila at the time around the offense. The trial court ruled that it was a matter of trial strategy, "and going forward on a different type of defense, an alibi, would have been damaging" to defendant's defense.

¶ 14    Defendant also specifically challenged trial counsel's failure to call Chris in support of his alibi defense. Trial counsel commented that Chris had provided a number of different versions of his proposed trial testimony. As a result of the inconsistencies, trial counsel believed that Chris would not be a credible witness. Additionally, trial counsel noted that Chris had never provided any information related to defendant's work alibi. The State added that Chris's testimony at the Diaz trial locked him into a version that did not include defendant's purported work alibi and would have controverted the statements in Patricia's affidavit. The trial court held that the failure to call Chris to testify was a matter of trial strategy, due to the multiple versions of his proposed testimony he provided to trial counsel.

¶ 15    Defendant specifically challenged trial counsel's investigation of the evidence Patricia would have provided, as well as his decision not to call her as a witness during the trial. Trial counsel indicated that he had repeated discussions with Patricia, but he believed that, because in 2007 she could not provide objective evidence that she and defendant visited Iowa beginning November 11, 1996, her testimony would not have been sufficient to solidly establish defendant's alibi. The State agreed with trial counsel's assessment. The trial court held that Patricia would have been an uncertain witness and that the decision whether to call her was a

matter of trial strategy.

¶ 16    Additionally, we note that *Krankel* counsel did not adopt defendant's allegation about Juan "Baby" Acevedo. Defendant alleged that Evangelina Hernandez told police that "Baby" had told her that "Too Tall" (Davila) had been the only person that Baby observed running from the scene of the shooting. Defendant stated that he provided trial counsel with Acevedo's identity and nickname but that trial counsel did not investigate or subpoena Acevedo for trial testimony. Trial counsel explained that Hernandez's information was only hearsay and that Hernandez could not provide him with Baby's identity; additionally, she appeared to disavow her statement to police about him. Trial counsel did not address defendant's allegation about giving him Baby's identity. The State noted that a police report characterized Hernandez's statement as a rumor she had heard; further, the State indicated that Hernandez was unable to identify Baby as Acevedo. The trial court held that the information about Acevedo "was only rumors. There was no substantial testimony that could be elicited. Ms. Hernandez did not remember any person by the name of 'Baby', and that was a dead end; and it was not ineffective assistance of counsel not to go any further on that."

¶ 17    Following this newly adopted procedure, the trial court individually addressed each of defendant's claims, determining that there was no basis to believe that trial counsel had provided ineffective assistance. The trial court then ruled that there was no basis to continue the *Krankel* inquiry and to appoint counsel to represent defendant on any of his claims. Effectively, the trial court dismissed defendant's claims.

¶ 18    Defendant appealed, and we determined that the trial court improperly allowed the State to actively participate in arguing against defendant's allegations of ineffective assistance, thereby effectively converting what should have been the preliminary *Krankel* inquiry into an adversarial hearing on the merits of defendant's allegations. See generally *Downs I*, 2012 IL App (2d)

100755-U.   Because we concluded that the trial court's conduct of the preliminary *Krankel* inquiry was flawed, we remanded the cause and directed the trial court to appoint counsel to represent defendant on his allegations. *Id.* ¶ 51.   We did not consider the merits of defendant's allegations; instead we instructed the court to proceed from the point at which *Krankel* counsel was appointed and to allow counsel to conduct his or her own investigation of defendant's allegations. *Id.* ¶ 52.

¶ 19    On remand, the trial court appointed the same *Krankel* counsel that it had before.   On October 3, 2012, *Krankel* counsel filed a third amended motion, this time declining to adopt four of the five claims he had previously adopted.   The third amended motion raised only a general charge of ineffective assistance, and this claim did not allege any specific acts by trial counsel that constituted neglect or deficient representation.   Likewise, the claim did not allege any specific prejudice accruing to defendant.   *Krankel* counsel noted that he was "disposed to decline to adopt" defendant's *pro se* allegations.   He explained that he nevertheless advanced the single and general claim because "the best judgment of trial counsel's overall performance lies with the [trial court] which had the ability to observe counsel throughout the trial."

¶ 20    *Krankel* counsel averred that he had reviewed the transcripts of the initial preliminary inquiry in deciding to decline to adopt defendant's *pro se* claims and to forgo raising any other substantive and specific claims on defendant's behalf.   *Krankel* counsel explained in the motion:

> "[T]he information provided by all participants during the hearings became an invaluable resource for this counsel's investigation in preparing the instant motion.   Although not sworn, the statements made were offered in open court and thus *Krankel* counsel found them to be reliable with respect to determinations made in the context of this motion."

Counsel further explained that he modeled his investigation into defendant's claims on the procedure employed for postconviction proceedings.   Counsel averred that, consistently with

Illinois Supreme Court Rule 651(c) (eff. Apr. 26, 2012), he "consulted sufficiently with Defendant to ascertain his allegations of ineffectiveness," he reviewed defendant's *pro se* pleadings and the trial transcripts, and he reviewed the transcripts from the initial preliminary inquiry.

¶ 21    Defendant contradicted *Krankel* counsel's representations.  Defendant informed the trial court that counsel had not spoken with him about any substantive issues before filing the third amended motion.   Counsel explained to the court that, when he wrote that he "consulted sufficiently with Defendant to ascertain his allegations of ineffectiveness," he meant that he reviewed the transcripts of the initial preliminary inquiry and that he particularly relied on defendant's *pro se* presentations of his claims.  Counsel stated that, based on the interchanges between defendant and trial counsel, he decided not to adopt defendant's specific claims of ineffective assistance.

¶ 22    The trial court then had the parties argue the third amended motion.  The trial court held that the motion did not support a claim of ineffective assistance, because it did not allege either specific acts of deficient performance or specific examples of prejudice.  The motion was denied.

¶ 23    Defendant appealed, and we decided the appeal solely on the jury-question issue.  *Downs II*, 2014 IL App (2d) 121156, ¶ 42.  Our supreme court reversed our decision on the jury-question issue and remanded the cause to this court, ordering us to consider defendant's *Krankel* issue.  *Downs III*, 2015 IL 117934, ¶ 34.  In accord with our supreme court's direction, we now consider defendant's contentions regarding the second *Krankel* hearing.

¶ 24                        II. ANALYSIS

¶ 25    In this appeal, we consider defendant's claim that *Krankel* counsel provided ineffective assistance.  Defendant argues that counsel effectively abdicated his role when he declined to adopt any of defendant's specific allegations of ineffective assistance of trial counsel and,

- 10 -

instead, raised only a general claim that alleged no specific acts of deficient representation and no specific examples of prejudice. Defendant argues that *Krankel* counsel's performance fell below an objective standard of reasonableness by failing to consult with defendant about his claims and to investigate possible witnesses to support his claims. Defendant argues that he was prejudiced by *Krankel* counsel's deficient performance, because he was deprived of a meaningful adversarial hearing on his potentially meritorious claims. We consider defendant's arguments in turn.

¶ 26                             A. Standard of Review

¶ 27    As an initial matter, we consider our standard of review. A claim of ineffective assistance is reviewed under the familiar standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this standard, a defendant must show both that his counsel's performance fell below an objective standard of reasonableness and that prejudice resulted from counsel's deficient performance. *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010). Prejudice is demonstrated by showing a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v. Williams*, 2016 IL App (3d) 130901, ¶ 24. We review *de novo* whether counsel rendered ineffective assistance. *Id.*

¶ 28    The *Strickland* ineffectiveness standard also applies to appellate counsel. *People v. Moore*, 402 Ill. App. 3d 143, 146 (2010). In raising a claim of ineffectiveness of appellate counsel, the defendant must show both that appellate counsel's failure to raise an issue on direct appeal was objectively unreasonable and that the defendant was prejudiced by that failure. *Id.* at 146-47. Prejudice is demonstrated by showing that the underlying issue had merit. *Id.* at 147.

¶ 29    We believe that the analysis of a claim of appellate counsel's ineffectiveness provides a useful analogy to the analysis of a claim of *Krankel* counsel's ineffectiveness in the evidentiary hearing following a successful preliminary *Krankel* inquiry. As it has developed, the *Krankel*

inquiry proceeds in two steps. In the first step, the trial court examines the factual bases of the defendant's *pro se* claims of ineffective assistance of trial counsel. *People v. Moore*, 207 Ill. 2d 68, 78 (2003). If, in this preliminary inquiry, the trial court determines that the claims lack merit or pertain only to matters of trial strategy, then it need not appoint new counsel and may deny the defendant's *pro se* motion. *Id.* If, however, the defendant's *pro se* claims show possible neglect on trial counsel's part, the trial court will appoint new counsel. *Id.* Following the appointment of new counsel (*i.e.*, *Krankel* counsel), the matter proceeds to the second step of the *Krankel* inquiry. *Id.* The second step consists of an adversarial and evidentiary hearing on the defendant's claims of ineffective assistance, at which the defendant is represented by the *Krankel* counsel. *People v. Flemming*, 2015 IL App (1st) 111925-B, ¶ 82.

¶ 30    Much like appellate counsel, *Krankel* counsel is required to present the defendant's meritorious claims at the second-step hearing. Thus, it makes sense to view the obligations of appellate counsel and Krankel counsel in a similar manner. Accordingly, we hold that, to make out a claim of ineffective assistance of *Krankel* counsel, the defendant must show both that *Krankel* counsel's failure to prosecute an ineffective-assistance claim during the second-step hearing was objectively unreasonable and that the defendant was prejudiced by that failure. See *Moore*, 402 Ill. App. 3d at 146-47. To show prejudice in this context, the defendant must demonstrate that the underlying claim had merit. See *id.* at 147. With these principles in mind, we turn to defendant's contentions.

¶ 31                              B. Deprivation of Process

¶ 32    Defendant argues that *Krankel* counsel was ineffective because he simply failed to present any specific claims of ineffective assistance of trial counsel, thereby effectively depriving him of the *Krankel* procedure on remand. Defendant argues that *Krankel* counsel's failure to present any specific ineffectiveness claims deprived him of the opportunity to subject

those claims to meaningful adversarial testing. The State counters with the fact that *Krankel* counsel drafted an extensive memorandum analyzing each of defendant's *pro se* claims of ineffectiveness. According to the State, *Krankel* counsel's preparation of the memorandum and his appearance before the court to argue the one, nonspecific point he actually adopted was all he could ethically accomplish and was sufficient to afford defendant's claims with the meaningful adversarial testing of a hearing.

¶ 33 The phrase, "meaningful adversarial testing," is a term of art with a specific meaning in cases involving allegations of ineffective assistance of counsel. If counsel fails to subject the State's case to meaningful adversarial testing, then the burden of showing prejudice under the *Strickland* test is relaxed because prejudice will be presumed. *People v. Rogers*, 2015 IL App (2d) 130412, ¶ 69. We understand defendant to be arguing that *Krankel* counsel did not allow defendant's claims to be subjected to meaningful adversarial testing, thereby avoiding *Strickland*'s requirement that he demonstrate prejudice, because prejudice will be presumed. *Id.*

¶ 34 In his initial appointment, *Krankel* counsel adopted five of defendant's *pro se* claims of ineffective assistance, including the general claim, the bench-trial claim, and the alibi claim. *Krankel* counsel was present at least at the first day of the initial preliminary inquiry, when the trial court rescinded his appointment. At the end of that proceeding, the trial court held that the alibi claim and the bench-trial claim both raised matters of strategy and it dismissed both claims, along with the general claim.

¶ 35 In *Downs I*, when we deemed this hearing to be improper and remanded the cause, we instructed the trial court to appoint *Krankel* counsel and allow *Krankel* counsel to proceed on the five claims that *Krankel* counsel had already adopted as well as any new claims his investigation might reveal to be indicative of possible neglect. Upon remand, the trial court reappointed the same attorney, and *Krankel* counsel filed a third amended motion alleging ineffective assistance

of trial counsel. In the motion, *Krankel* counsel stated that he modeled his investigation on the postconviction-petition procedure. To that end, *Krankel* counsel purported to include a certification, pursuant to Illinois Supreme Court Rule 651(c) (eff. Apr. 26, 2012), that he had: "1) consulted sufficiently with Defendant to ascertain his allegations of ineffectiveness, 2) *** reviewed and considered Defendant's written filings, 3) *** examined the trial transcript, and 4) reviewed the transcripts of the hearings held on October 28, 2009, November 25, 2009, and December 28, 2009." Counsel further represented:

> "[T]he information provided by all participants during the hearings became an invaluable resource for this counsel's investigation in preparing the instant motion. Although not sworn, the statements made were offered in open court and thus *Krankel* counsel found them to be reliable with respect to the determinations made in the context of this motion."

Finally, *Krankel* counsel abandoned all of defendant's *pro se* allegations except the general allegation.

¶ 36 When the third amended motion advanced to a second-step hearing, defendant informed the trial court that *Krankel* counsel had not spoken with him in preparing the motion. Defendant also stated that counsel had not interviewed any of the witnesses supporting defendant's alibi claim. Defendant represented that he was surprised that counsel had abandoned the substantive claims from the second amended motion.

¶ 37 *Krankel* counsel responded:

> "[W]hen I make that statement [in the third amended motion] that I have consulted with [defendant] sufficiently, that means that I have reviewed all of the allegations; and I have done it twice now. I did it once in 2009 [for the initial preliminary inquiry].
>
> To be honest and fair about this case, I went back through all of the allegations that he raised, both the original filing and the supplementary filing, which you approved

sometime later on just before we went into that first hearing, and you rescinded my appointment the first time.

* * *

As an officer of the court, I have an obligation not to bring forth allegations that don't make sense, that don't make sense and don't meet standards. Especially in this case we are talking about *Strickland* standards, the first prong of *Strickland*, and it's well settled that a difference between a client and his trial attorney over tactics and strategies is not sufficient to bring that forward as an allegation of ineffective assistance.

I adopted the procedure. Although it's not required by any *Krankel* progeny or *Krankel* itself, I adopted the procedure that we normally look at a postconviction hearing, that sort of process. It doesn't specify how much contact I have to have with a client.

With the amount of material, as [t]he Court well knows and I know the State well knows, that he presented to begin with, all the writings, and in addition *** I had the full transcript of all three of the hearings in October, November, and December of 2009, and to me that was an incredibly specific and detailed investigative tool, and there is nothing in those transcripts, especially on the four [*pro se* allegations] that I declined to proceed with this time that I had not adopted the first time.

There is nothing that I found in those transcripts during that hearing—these were open court statements. He had a chance to respond. So I considered his responses, as well as the responses of trial counsel. None of those were determinative in terms of what I presented here in this third amended motion. I felt like I have examined all of these allegations, and what I am bringing forward I believe is the proper way to proceed.

[Defendant] in our conversations has some issues that may have some substantive weight, but those are considerations for an appeal, not for a *Krankel* hearing, not for an

ongoing motion to determine whether or not the trial counsel was ineffective or not, because all of these relate almost entirely to disagreements between him and trial counsel, and I believe that with the transcripts of those hearings that I have enough information to present to [the] court the motion as it is right now."

¶ 38   Defendant's central point on appeal is that *Krankel* counsel abdicated his responsibility and did not act as counsel on remand. *Krankel* counsel's decisions not to meet with defendant and not to present specific claims are difficult to review: first, because there is no definitive procedure regarding the conduct of a second-step *Krankel* hearing, and second, because we already know how the trial court was inclined to view defendant's specific allegations, based on its rulings in the initial preliminary inquiry.  However, at a minimum, *Krankel* counsel was required to consult with defendant, even under his own investigation procedure, which he modeled after an appointed attorney's obligations in postconviction proceedings. *Krankel* counsel appears to have conceded that he did not consult with defendant; instead, he looked at defendant's *pro se* motions and the transcripts of the initial preliminary inquiry.  In so doing, *Krankel* counsel would inevitably determine that all of defendant's claims were going to fail, because they had already been presented once to the trial court, which rejected them.  Thus, *Krankel* counsel determined that all of defendant's claims were frivolous and unworthy of being presented to the trial court at a second-step *Krankel* hearing.

¶ 39   However, there is a difference between a frivolous claim and a claim that is nonfrivolous yet likely to be unsuccessful.  Again, borrowing from the terminology surrounding postconviction petitions, a frivolous claim is one with no arguable basis in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009).  The nonfrivolous claim will have at least an arguable basis in law or in fact, although it might turn out to be unsuccessful. *People v. Teran*, 376 Ill. App. 3d 1, 2 (2007).  Nevertheless, we believe that such a claim must be presented to the trial court

despite counsel's misgivings about the possibility of success. Here, we believe that *Krankel* counsel conflated the two types of claims in his decision not to present any specific claims.

¶ 40    *Krankel* counsel undoubtedly devoted time in reviewing the transcripts and motions, and in drafting defendant's third amended motion. We do not believe, however, that devoting time to a matter alone can avoid the claim that defendant makes here, namely, that counsel's performance was so deficient as to amount to virtually no representation.

¶ 41    Defendant argues that *Krankel* counsel unreasonably failed to present his alibi claim based on Patricia's affidavit. In this claim, defendant alleged that trial counsel did not investigate the existence of the alibi that he was at work at his seasonal employment, as was his wont at that time, during the overnight hours of November 9 and 10, 1996. In the initial preliminary inquiry, trial counsel stated that he had talked with Patricia but that she had nothing concrete, beyond her testimony, to prove up the alibi. Trial counsel also inquired with Borg-Warner but was informed that defendant's employment records were no longer available. *Krankel* counsel thus concluded that defendant's claim could not succeed at the second-step hearing, and he chose not to raise it.

¶ 42    The problem here is that Patricia averred that trial counsel had not investigated her alibi information around the time of trial. While the decision to call a witness or to present an alibi defense is a matter of strategy that is generally immune from review, counsel must first investigate the claim. *People v. Brown*, 336 Ill. App. 3d 711, 718 (2002); see also *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994) (an attorney is required to perform a reasonable amount of investigation; "when alibi witnesses are involved, it is unreasonable for counsel not to try to contact the witnesses" to determine whether their testimony would be helpful to the defense). Thus, defendant raised the clearly potentially meritorious claim that trial counsel had failed to adequately investigate defendant's alibi that he was at work. *Krankel* counsel admitted

that he did not consult with defendant, and we further infer that he did not contact Patricia to ascertain whether she had anything that could confirm the alibi, because he indicated that he relied only on transcripts and the court file in preparing the third amended motion. We recognize that trial counsel extensively discussed his investigation at the initial preliminary inquiry. Nevertheless, defendant had presented a nonfrivolous claim, albeit one that might not succeed. In our view, it was incumbent upon *Krankel* counsel to present the nonfrivolous claim with whatever support he could muster at the second-step *Krankel* hearing. We believe that K*rankel* counsel's failure to specifically present the claim fell below a reasonable level of representation.

¶ 43    The State argues that defendant cannot show prejudice, because Patricia was unable to provide verifiable information, beyond her own testimony, regarding defendant's alibi. The State reasons that, in the absence of prejudice, defendant cannot succeed on his claim that trial counsel was ineffective. Similarly, because the underlying claim against trial counsel cannot succeed, *Krankel* counsel cannot be deemed ineffective for not pursuing a forlorn hope. We disagree.

¶ 44    As we have noted, *Krankel* counsel was obligated to present any nonfrivolous claims of ineffective assistance of trial counsel that his investigation revealed. Patricia averred that trial counsel did not investigate her claim that she drove defendant to work before the offense and picked him up from work the next morning, after the offense. Further, more than 10 years had passed between the date of the offense and the levying of charges against defendant. This lapse of time provides a reasonable explanation for trial counsel's inability to corroborate the alibi through employment records, and this undercuts *Krankel* counsel's acceptance of trial counsel's claim of strategy on the alibi issue. Thus, *Krankel* counsel would not have violated an ethical obligation not to present frivolous claims had he advanced the claim. The fact that the claim

might not have succeeded does not render it frivolous. See *Hodges*, 234 Ill. 2d at 16 (a frivolous claim has no arguable basis in fact or law).

¶ 45 In addition, and perhaps more importantly, we view defendant's central claim in this appeal to be that *Krankel* counsel, by not advancing his nonfrivolous allegations of ineffective assistance of trial counsel, was not acting as counsel and provided him with virtually no representation at all. In such a situation, as we noted above, prejudice will be presumed. *Rogers*, 2015 IL App (2d) 130412, ¶ 69. The State's contention, that defendant cannot show prejudice, then, is premature. The question at this point is whether *Krankel* counsel performed as counsel and provided defendant with representation as contemplated under our constitutions. If the answer is affirmative, then we can turn the inquiry to whether defendant can demonstrate prejudice.

¶ 46 In this case, the decision not to present a nonfrivolous claim cannot be squared with *Krankel* counsel's obligations to defendant. Before we can definitively answer the question posed above, however, we must consider the rest of the record in light of defendant's contention.

¶ 47 Defendant also contends that *Krankel* counsel unreasonably failed to raise his bench-trial allegation in the remanded second-step *Krankel* hearing. The State argues that, after the jury trial commenced, defendant no longer had the right to waive the jury and proceed with a bench trial; rather, the decision was within the trial court's discretion. *People v. Zemblidge*, 104 Ill. App. 3d 654, 657 (1982). The State thus argues that, after the jury trial commenced, whether to pursue defendant's wish to waive the jury became a matter of trial strategy, which is generally unreviewable.

¶ 48 We cannot say that defendant's bench-trial allegation constituted a nonfrivolous claim. Even accepting that defendant, for the sake of argument, had an unfettered right to inform the trial court that he wished to waive the jury, there is no question that he did not so inform the trial

court. When counsel refuses or fails to do so, the defendant is obliged to make his wish to waive the jury known to the trial court. *People v. Powell*, 281 Ill. App. 3d 68, 73 (1996). Defendant did not do so, and thus he would be unable to demonstrate prejudice from trial counsel's refusal to ask for a jury waiver. Because he cannot show that trial counsel was ineffective on this allegation, he likewise cannot show that *Krankel* counsel was ineffective for failing to adopt it. Moreover, this allegation does not circumvent the necessity of showing prejudice, because there is no issue of failing to investigate.

¶ 49 This does not end our inquiry into defendant's claim that *Krankel* counsel abdicated his obligations upon remand. In defendant's *pro se* motions, defendant alleged that "Baby" told Hernandez that he had seen only one person, Davila, fleeing from the scene of the shooting. Hernandez mentioned the statement to police, but was unable or unwilling to give Baby's name to the police. Defendant averred that he informed trial counsel that Baby was Acevedo and that Acevedo continued to live in the area since the shooting. Trial counsel stated that Hernandez could not recall the statement at the time of trial and could not recall Baby's identity. Further, the police reports provided a dead end. Trial counsel did not comment on whether defendant provided him with Baby's identity. At the initial preliminary inquiry, the trial court dismissed the claim as only a rumor that was a dead end.

¶ 50 In the third amended motion, *Krankel* counsel declined to adopt the allegation, because the decision not to call a particular witness was a matter of trial strategy. *Krankel* counsel further reasoned that defendant had failed to overcome his burden of demonstrating why it was not a sound strategic decision and had failed to show either deficient representation or prejudice.

¶ 51 The essence of defendant's allegation was that trial counsel failed to investigate Acevedo's purported statement. According to defendant, he made trial counsel aware of Hernandez's statement. Defendant also provided trial counsel with Baby's identity. According

to trial counsel, he never investigated Acevedo and he was stymied by Hernandez's failure or reluctance to identify Baby so he could follow up the statement. However, defendant's claim directly contradicts trial counsel's statements and clearly indicates that trial counsel did not investigate a potentially exculpatory witness. Moreover, Acevedo's purported statement contradicts Davila's version of events and supports defendant's.

¶ 52    *Krankel* counsel's decision not to adopt the allegation about Acevedo's purported statement was deficient representation. The allegation on its face indicated that trial counsel had not adequately investigated Acevedo and his purported statement. Trial counsel had Acevedo's identity, and the import of his statement was manifest. Accordingly, the failure to present the allegation is clearly indicative of potential neglect.

¶ 53    Defendant did not raise this contention in briefing this appeal. Generally, the failure to raise a claim on appeal constitutes forfeiture. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). Forfeiture is, however, a limitation on the parties and not the court. *People v. Carter*, 208 Ill. 2d 309, 322 (2003). We may address procedurally defaulted issues in order to achieve a just result and maintain a uniform body of precedent. *People v. Daniels*, 307 Ill. App. 3d 917, 926 (1999).

¶ 54    Here, defendant's contention on appeal is that *Krankel* counsel abdicated his obligation to represent defendant in presenting his claims of ineffective assistance of trial counsel and that he acquiesced in the trial court's judgment of the claims during the initial preliminary inquiry. We believe that *Krankel* counsel's failure to raise the claim regarding Acevedo's purported statement demonstrates that abdication. When we read the same transcript as *Krankel* counsel, defendant's claim that he informed trial counsel of Baby's identity and the general area in which he resided fairly leaps out. Yet *Krankel* counsel ignored this claim. Significantly, trial counsel did not dispute defendant's averment that defendant told him of Baby's identity; instead, trial counsel claimed that Acevedo's purported statement was an unverifiable rumor, and counsel did no

further investigation once Hernandez did not pan out as a source of the statement. *Krankel* counsel apparently uncritically chalked up defendant's *pro se* allegation to nothing more than a disagreement between client and counsel about strategy, despite the clear allegation that trial counsel failed to adequately investigate the purported statement, and despite the statement's clear support of defendant's claim that he was not present at the shooting.

¶ 55    Weighing defendant's arguments, we again note that defendant's central claim in this appeal is that *Krankel* counsel abdicated his responsibility to present defendant's claims of ineffective assistance. On defendant's side of the ledger, we believe that defendant's alibi claim was nonfrivolous and should have been presented at the second-step *Krankel* hearing, for the trial court to adjudicate the merits. Likewise, *Krankel* counsel should have adopted the obviously nonfrivolous claim arising out of Acevedo's purported statement.

¶ 56    On the other hand, *Krankel* counsel prepared a third amended motion that purported to consider each of defendant's *pro se* claims in light of the record from the initial preliminary inquiry. *Krankel* counsel attached numerous exhibits, but the exhibits were either those already provided by defendant in his *pro se* motions or were copies of the transcripts of the initial preliminary inquiry. Examining the third amended motion's treatment of each of defendant's *pro se* allegations, we see that *Krankel* counsel echoes the arguments made, as well as the conclusions drawn by the trial court, in the initial preliminary inquiry. Although *Krankel* counsel attempted to comply with this court's mandate, we cannot say that his performance constituted "representation" as contemplated by our constitutions. The omission of the alibi claim represents the failure to present a nonfrivolous claim at the second-step *Krankel* hearing. Counsel's treatment of the alibi claim shows that he believed that the claim would be unsuccessful. Counsel apparently conflated the ultimate viability of the claim with whether it was frivolous. In our view, counsel was obligated to present any nonfrivolous claims to the trial

court.  Likewise, we believe that counsel's failure to recognize the nonfrivolous nature of the claim regarding Acevedo's statement cannot be excused.  The issue for counsel was not ultimate viability, but process.  At the second-step *Krankel* hearing, defendant was entitled to a full and fair hearing on any nonfrivolous claims.  In light of the failures identified above, we cannot say that defendant received the process to which he was entitled.  Moreover, in light of the failures identified above, we do not believe that, despite counsel's best intentions, he was acting as an adversarial advocate for defendant.  We must conclude, reluctantly, that counsel did abdicate his role at the second-step *Krankel* hearing, when he abandoned defendant's specific nonfrivolous claims of ineffective assistance of trial counsel.  This abandonment means that prejudice will be presumed.  *Rogers*, 2015 IL App (2d) 130412, ¶ 69.  Accordingly, we hold that defendant has made a sufficient showing under *Strickland* that *Krankel* counsel provided ineffective assistance. We therefore reverse the judgment of the trial court and remand the cause.

¶ 57    The State argues that *Krankel* counsel was obligated to make an independent investigation and was required to present only those claims that he believed passed that investigation's muster.  We agree.  In *Moore*, 207 Ill. 2d at 78, our supreme court observed that, if the defendant's *pro se* claims survived the initial preliminary inquiry, counsel would be appointed in order to independently review the defendant's claims and to avoid the conflict of interest that trial counsel would experience in trying to justify his or her actions contrary to the defendant's position.  However, as we have observed above, *Krankel* counsel appears to have conflated a claim's ultimate viability with whether the claim was nonfrivolous.  Further, counsel's investigative acumen is called into question by his failure to appreciate and investigate defendant's claim about Acevedo's purported statement.  Satisfaction of counsel's obligation to independently investigate cannot make up for his unfulfilled obligation to present nonfrivolous claims that his investigation should have unearthed.

¶ 58 The State specifically argues that *Krankel* counsel was obligated not to present frivolous claims to the trial court. Again, we agree. We have determined, however, that the alibi claim was nonfrivolous, because it was supported by Patricia's affidavit and perhaps could have been supported by Chris's affidavit. Because there is evidence supporting the alibi, because the lapse of time explains trial counsel's inability to develop corroborating evidence, and because defendant claimed that trial counsel did not investigate the claim, we conclude that defendant raised a nonfrivolous claim for purposes of the second-step hearing. If counsel had presented the claim, then the court could have decided it on its merits. However, by failing to present the claim, defendant was deprived of the process that *Krankel* counsel was appointed to ensure. Therein, as we have discussed above, lies error. The State does not endeavor to support its inferred contention that the alibi claim was frivolous, and so we reject it.

¶ 59 The State attempts to argue that the alibi claim presented only a matter of trial strategy. We agree that certain decisions, such as whether to call a witness and whether to present an alibi defense, are generally matters of trial strategy, largely immune from ineffective-assistance claims. *People v. Enis*, 194 Ill. 2d 361, 378 (2000). However, defendant claimed that the failure to raise the alibi defense and to call the witnesses supporting it was due to trial counsel's failure to investigate. In support, in advance of the second-step *Krankel* hearing, defendant had procured Patricia's affidavit and Chris's statement, thereby raising a nonfrivolous claim that it was due to neglect, not strategy, that trial counsel did not raise the alibi defense. *Krankel* counsel was therefore obligated to present the claim, notwithstanding the chance that it might not succeed. Accordingly, we cannot accept the State's contention that the alibi claim presented nothing more than a matter of trial strategy.

¶ 60 The State argues that it was defendant's burden to demonstrate why trial counsel's decision was not sound strategy and that defendant failed to carry the burden. We agree that, in

making a claim of ineffective assistance, the defendant must show that counsel's performance was deficient and, in so doing, overcome the presumption that counsel's conduct was reasonable. *People v. Rhodes*, 386 Ill. App. 3d 649, 653-54 (2008). However, that is defendant's *ultimate* burden. For purposes of the *Krankel* hearing, defendant overcame his burden by alleging, with evidentiary support, that trial counsel did not investigate the alibi claim, thereby removing counsel's decision from the realm of strategy and placing it into the realm of potential neglect. We therefore reject the State's contention.

¶ 61    The State takes issue with defendant's claim that *Krankel* counsel failed to conduct a competent and meaningful investigation into defendant's alibi claim. The State argues that the fact of the third amended motion belies defendant's contention, because it shows that *Krankel* counsel conducted an independent investigation as required under *Moore*, 207 Ill. 2d at 78. However, the fact that an investigation occurred does not necessarily mean that it was meaningfully conducted or that it was competently performed. While we agree that defendant's argument might be hyperbolic, we disagree with the State's contention. As we have discussed above, the failure to present the nonfrivolous claims identified tend to rebut the State's contention, and we reject it.

¶ 62                          III. CONCLUSION

¶ 63    For the foregoing reasons, we hold that *Krankel* counsel abdicated his responsibility to present defendant's nonfrivolous claims of ineffective assistance of trial counsel, thereby depriving him of his right to subject those claims to meaningful adversarial testing at a proper second-step *Krankel* hearing. Accordingly, we reverse the judgment of the circuit court of Kane County. We must also remand this cause so that a proper second-step *Krankel* hearing can be conducted. As in *Downs I*, we direct the trial court to appoint an attorney to represent defendant in presenting his claims of ineffective assistance of trial counsel. The trial court shall not appoint

the same attorney who represented defendant in the proceedings at issue in this appeal. Finally, the new attorney shall be allowed to conduct an investigation into defendant's claims of ineffective assistance of trial counsel and is admonished to present any nonfrivolous claims supported by the record or by his or her independent investigation.

¶ 64    Reversed and remanded with directions.