# Illinois Official Reports

## Appellate Court

---

**People v. Downs, 2017 IL App (2d) 121156-C**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK A. DOWNS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1156 |
| Filed | August 15, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 07-CF-2986; the Hon. Timothy Q. Sheldon, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Jeffrey B. Kirkham, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Joseph H. McMahon, State's Attorney, of St. Charles (Patrick Delfino, Lawrence M. Bauer, and Joan M. Kripke, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1        This case returns to us following a supervisory order of our supreme court directing us to vacate our most recent decision and to reconsider our analysis in light of *People v. Cherry*, 2016 IL 118728. Procedurally, then, we are in the position of considering the case on remand from the supreme court following its reversal of our decision in the second appeal of defendant, Mark A. Downs. In the first appeal, *People v. Downs*, 2012 IL App (2d) 100755-U (*Downs I*), defendant appealed the trial court's dismissal, during the first stage of a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181 (1984)), of his posttrial claims of ineffective assistance of trial counsel. We reversed the dismissal because the trial court erroneously converted the *Krankel* preliminary inquiry into an adversarial hearing on the merits, in which the State actively participated and defendant was required to represent himself without benefit of counsel. Before the flawed *Krankel* hearing, the trial court noted that some of defendant's allegations raised issues of possible neglect by his trial counsel, but, after the hearing, it dismissed all of defendant's claims. We remanded the cause, directing the trial court to appoint counsel and to continue the case from that point. *Downs I*, 2012 IL App (2d) 100755-U, ¶¶ 50-51.

¶ 2        On remand, the trial court appointed counsel (*Krankel* counsel) and held a *Krankel* hearing. *Krankel* counsel adopted only a general claim of ineffective assistance of trial counsel and declined to adopt any of defendant's specific allegations. The trial court again dismissed defendant's allegations, and defendant again appealed.

¶ 3        In the second appeal, defendant contended that *Krankel* counsel was ineffective in conducting the second *Krankel* hearing. Defendant also, for the first time in the case, challenged the trial court's definition of proof beyond a reasonable doubt in response to the jury's question to the court: "What is your definition of reasonable doubt, 80%, 70%, 60%?" We addressed the reasonable-doubt issue and laid the *Krankel* issue to the side. *People v. Downs*, 2014 IL App (2d) 121156, ¶ 15 (*Downs II*). In *Downs II*, we held that the trial court erred in responding to the jury's question and that there was a reasonable likelihood that defendant's conviction did not satisfy the beyond-a-reasonable-doubt standard. *Id.* ¶ 31. The State appealed, and our supreme court reversed, holding that the trial court appropriately responded to the jury's question and reiterating that a court should refrain from attempting to define reasonable doubt. *People v. Downs*, 2015 IL 117934, ¶¶ 24, 32 (*Downs III*). The supreme court then remanded the cause to this court to allow us to consider the *Krankel* issue. *Id.* ¶ 34.

¶ 4        Upon that remand, we considered the conduct of *Krankel* counsel during the second *Krankel* hearing. *People v. Downs*, 2016 IL App (2d) 121156-B (*Downs IV*). In brief, we accepted defendant's contention that *Krankel* counsel had abandoned his role as counsel and therefore was ineffective. See *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (counsel is ineffective if (1) his or her performance fell below an objective standard of reasonableness and (2) prejudice resulted, meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). In *Downs IV*, we concluded that, because *Krankel* counsel abandoned his role as counsel, prejudice could be presumed. See *United States v. Cronic*, 466 U.S. 648, 656-57 (1984) (prejudice may be presumed in limited circumstances, such as where counsel

- 2 -

effectively provides no representation). The State appealed this ruling and, on November 23, 2016, our supreme court entered the following order:

> "In the exercise of this Court's supervisory authority, the Appellate Court, Second District, is directed to vacate its judgment in [*Downs IV*]. The appellate court is directed to consider the effect of this Court's opinion in [*Cherry*, 2016 IL 118728], on the issue of whether *Krankel* counsel's performance was constitutionally adequate under *Strickland*, and determine if a different result is warranted." *People v. Downs*, No. 121100 (Ill. Nov. 23, 2016) (supervisory order).

¶ 5 Accordingly, pursuant to our supreme court's supervisory order, we vacate our judgment in *Downs IV*, 2016 IL App (2d) 121156-B, and return to the procedural position following *Downs III*'s reversal and remand directing us to consider defendant's claim of ineffective assistance of *Krankel* counsel; this time, however, we have the benefit of our supreme court's decision in *Cherry*.

¶ 6 In this appeal, we will consider defendant's challenge to the conduct of *Krankel* counsel at the second *Krankel* hearing. Defendant argues that *Krankel* counsel was ineffective because he abdicated his role to represent defendant when he abandoned defendant's specific claims of ineffective assistance of trial counsel. We reverse and remand the cause.

## I. BACKGROUND

¶ 7

¶ 8 In *Downs I*, we provided a full account of the events underlying the case. In *Downs II*, we summarized those events. In light of both of these factual summaries, we need not reprise the substantive facts of the offense; instead, we will provide an outline of the evidence as necessary and focus on the procedures now at issue.

¶ 9 In April 2009, defendant was convicted of the first degree murder (720 ILCS 5/9-1(a)(1) (West 1996)) of six-year-old Nico Contreras. Early in the morning of November 10, 1996, Nico was shot while he slept. The intended target was Robert Saltijeral, Nico's uncle, who was a member of the Latin Home Boys gang. The shooter was supposed to be Ruben Davila, accompanied by defendant and Elias Diaz, who were members of the Almighty Ambrose gang. A week before Nico's death, Davila's car had been shot up by Latin Home Boys gang members; Davila and defendant were tasked by the Almighty Ambrose gang to shoot Saltijeral to pay back the Latin Home Boys for shooting at Davila. According to Davila's testimony, Davila balked and defendant shot at the house, ultimately killing Nico.

¶ 10 Davila and Alejandro Solis testified at defendant's trial. Davila received an incredibly lenient plea deal to testify against defendant. Davila admitted to the murder of Jose Yepiz, which occurred a few weeks after Nico's murder, along with a number of other shootings. Davila was charged only with aggravated discharge of a firearm in the Yepiz murder and received a recommendation to be placed in a boot camp program or, if he failed to satisfactorily complete the program, to receive an eight-year sentence. Additionally, Davila received nearly $39,000, paid to him or paid on his behalf for expenses and to support his family in Mexico.

¶ 11 Solis denied that he received a *quid pro quo* deal in exchange for his testimony; rather, he testified that he cooperated because he believed that it was the right thing to do and it cleared his conscience. Still, even in the absence of an explicit deal, a 2½-year term of imprisonment was vacated, and Solis was resentenced to a 30-month term of probation instead. Solis also received $5000 to pay a child support arrearage allowing his release from incarceration, and he

was paid $3200 for working as an informant, some of which was paid for information relating to Nico's murder.

¶ 12      Based on Davila's and Solis's descriptions of Nico's murder, defendant was convicted of the murder.[1] Following the verdict, but before the sentencing, defendant filed two *pro se* motions alleging that his trial counsel had provided ineffective assistance. Defendant's second motion incorporated all of the allegations from the first motion and added more allegations. Defendant's second motion was 60 pages in length and contained 34 allegations. On July 31, 2009, pursuant to *Krankel*, the trial court appointed *Krankel* counsel, but it had not yet held a preliminary inquiry into the factual bases of defendant's allegations. On October 27, 2009, *Krankel* counsel filed a second amended motion on defendant's behalf, adopting five of defendant's *pro se* allegations. On November 25, 2009, defendant filed a third *pro se* motion, alleging 13 additional claims of ineffective assistance.

¶ 13      Among the five claims that *Krankel* counsel adopted were two claims pertinent here: (1) trial counsel ignored or refused defendant's request to choose a bench trial and (2) trial counsel failed to sufficiently investigate and present defendant's alibi defense. In submitting defendant's second amended motion alleging ineffectiveness of trial counsel, *Krankel* counsel stated with respect to the bench-trial claim:

> "Counsel adopts in part and amends Defendant's #11, to wit: 'On first and second day of trial defendant asked (trial) counsel to dismiss the Jury and instead continue with a Bench Trial, but counsel ignored defendant.' Defendant acknowledges that once the trial had begun the decision to waive defendant's jury right reverts to the discretion of the court (*People v. Zemblidge*, 104 Ill. App. 3d 654 *** (1982)), however, trial counsel never brought Defendant's request to the attention of the court. Defendant alleges that trial counsel's failure to allow defendant's request to be considered by the Court not only constitutes error under *Strickland*'s first prong, but also establishes prejudice to Defendant's cause so severe that under *Strickland*'s second prong that but for counsel's unprofessional error, the result of the proceeding would have been different."

On the alibi issue, *Krankel* counsel stated:

> "Counsel adopts in part and amends Defendant's #4, to wit: Patricia Serrano [(defendant's sister)] was not called to testify to an alibi defense asserted to trial counsel by Defendant. Defendant alleges that Ms. Serrano's testimony would have eviscerated the State's evidence. Trial counsel's failure to call Ms. Serrano to testify not only constitutes error under *Strickland*'s first prong, but also establishes prejudice to Defendant's cause so severe that under *Strickland*'s second prong that but for counsel's unprofessional errors, the result of the proceeding would have been different. A copy of Ms. Serrano's sworn, notarized statement labeled affidavit filed [*sic*] stamped September 8 is attached as Exhibit B-1 thru [*sic*] B-3."

---

[1]During the jury's deliberations, it first requested the transcripts of four witnesses' testimony; it later asked the trial court how it defined reasonable doubt: "80%[,] 70%[, or] 60%?" The trial court responded to the reasonable-doubt question, but none of the transcripts had been provided before the jury reached its verdict. *Downs III* resolved the issue arising from the reasonable-doubt question, and we note these circumstances for completeness.

¶ 14     As noted, counsel adopted three of defendant's other *pro se* allegations of ineffective assistance of trial counsel. Specifically, counsel adopted (1) the allegation that trial counsel did not allow defendant to see certain pages of discovery and any pages of supplemental discovery, (2) the allegation that trial counsel made defendant sign stipulations without allowing defendant the opportunity to read and assent to the stipulations, and (3) the catch-all allegation, without describing any specific instances, that trial counsel's performance was deficient. Neither the discovery nor the stipulation issue has been raised in this appeal.

¶ 15     At the hearing on *Krankel* counsel's second amended motion, the trial court, on its own initiative and purportedly based on a recent Rule 23 order in another case, reconsidered the procedure it was going to follow. The trial court believed that, in conducting the preliminary inquiry into the factual bases of defendant's allegations, it was required to first allow defendant to discuss his allegations, without legal representation. The trial court thus rescinded *Krankel* counsel's appointment and ordered defendant to present his *pro se* allegations. In the procedure that followed, defendant would first read and elaborate on an allegation, trial counsel was invited to comment and argue against defendant's allegation, the State was invited to offer its argument in support of trial counsel and against defendant's allegation, and defendant was given an opportunity to have the last word in support of his allegation. In this fashion, the trial court thus converted the preliminary inquiry into an adversarial hearing on the merits of each allegation, during which defendant was not allowed to have legal representation.

¶ 16     In discussing the bench-trial allegation, defendant averred that, on the first and second days of the jury trial, defendant informed trial counsel that he wanted to dismiss the jury and proceed with a bench trial for the balance of the proceedings. Defendant asserted that trial counsel completely ignored him and that the jury trial proceeded to completion, notwithstanding defendant's expressed wishes. The trial court sought trial counsel's commentary on the allegation. Trial counsel explained that he acknowledged defendant's requests to convert the jury trial into a bench trial and then proceeded to talk defendant out of his desire on each day. Trial counsel noted that Diaz had been convicted by the same trial court at a bench trial and that defendant's jury trial involved essentially the same evidence as that presented during Diaz's bench trial. Trial counsel believed that it was extremely likely that, based on the same evidence, the trial court would return a guilty finding if the proceedings were converted into a bench trial. Trial counsel explained this to defendant and defendant seemed to acquiesce to this reasoning. Trial counsel noted that he believed that, had he not tried to talk defendant out of converting the proceedings into a bench trial, he would have been ineffective. Trial counsel also explained that defendant was never "insistent" about converting the proceedings into a bench trial; for his part, defendant stated that he was "almost 100 percent certain" that he wanted a bench trial. The trial court specifically dismissed this allegation, holding:

> "defendant has argued that it should have been a bench trial; and his attorney countered by saying the Court tried Elias Diaz at bench trial and found Elias Diaz guilty on a bench trial. Defense trial strategy was sound in that this Court had already heard that evidence regarding Elias Diaz and found the evidence credible and believable and relevant and found Elias Diaz guilty.
>
> It would have been bad trial strategy to go and retry [defendant] in front of this Court in that this Court had already found Elias Diaz guilty. That is trial strategy. The Court agrees with that as sound trial strategy."

¶ 17    Regarding the alibi allegation, defendant claimed that he was at work at the time of the murder. According to defendant, his sister (Patricia Serrano) and his brother (Chris Downs) were willing to testify in support of defendant's alibi. Patricia had averred that both defendant and Chris were living with her on the date of the murder. She recalled driving them to work at Borg-Warner in West Chicago during the holiday season, where both brothers were working in temporary seasonal positions. She further averred that the brothers' shifts began at 6 p.m. and ended at 6 a.m. and that their usual workdays coincided with the date of the murder. In addition, she particularly remembered the date of the murder because on November 11, the day following the murder, she and her brothers traveled to Iowa and spent the ensuing week there. She also averred that trial counsel did not investigate her alibi information. Trial counsel explained that he contacted Borg-Warner looking for employment records from the time around the date of the murder. Trial counsel explained that he spoke to two different lawyers at Borg-Warner, which he believed to be a benefit, because the two different people would approach the issue differently and possibly turn up the information he was seeking. However, trial counsel consistently learned that records for defendant were not available because the company simply did not keep records for temporary employees for such a length of time. Trial counsel also stated that no alibi had been developed contemporaneously with the offense and he believed that, as a matter of strategy, an alibi developed 10 years later would appear to be fabricated and would harm defendant's case. The State chimed in, noting that, during the initial murder investigation, defendant was questioned and did not raise a work alibi; instead, defendant admitted that he was with Davila at the time around the offense. The trial court ruled that this was a matter of trial strategy, stating that "going forward on a different type of defense, an alibi, would have been damaging" to defendant's defense.

¶ 18    Defendant also specifically challenged trial counsel's failure to call Chris in support of his alibi defense. Trial counsel commented that Chris had provided a number of different versions of his proposed trial testimony. As a result of the inconsistencies, trial counsel believed that Chris would not be a credible witness. Additionally, trial counsel noted that Chris had never provided any information related to defendant's work alibi. The State added that Chris's testimony at the Diaz trial locked him into a version that did not include defendant's work alibi and would have controverted the statements in Patricia's affidavit. The trial court held that the failure to call Chris to testify was a matter of trial strategy, due to the multiple versions of his proposed testimony he provided to trial counsel.

¶ 19    Defendant specifically challenged trial counsel's investigation of the evidence Patricia would have provided, as well as his decision not to call her as a witness during the trial. Trial counsel indicated that he had several discussions with Patricia, but he believed that, because in 2007 she could not provide objective evidence that she and defendant visited Iowa beginning November 11, 1996, her testimony would not have been sufficient to solidly establish defendant's alibi. The State agreed with trial counsel's assessment. The trial court held that Patricia would have been an uncertain witness and that the decision whether to call her was a matter of trial strategy.

¶ 20    We also note that *Krankel* counsel did not adopt defendant's allegation about Juan "Baby" Acevedo. Defendant alleged that Evangelina Hernandez told police that "Baby" had told her that "Too Tall" (Davila) had been the only person whom Baby observed running from the scene of the shooting. Defendant stated that he provided trial counsel with Acevedo's identity and nickname but that trial counsel did not investigate or subpoena Acevedo for trial

testimony. Trial counsel explained that Hernandez's information was only hearsay and that Hernandez could not provide him with Baby's identity; additionally, she appeared to disavow her statement to police about him. Trial counsel did not address defendant's allegation about giving him Baby's identity. The State noted that a police report characterized Hernandez's statement as a rumor she had heard; further, the State indicated that Hernandez was unable to identify Baby as Acevedo. The trial court held that the information about Acevedo "was only rumors. There was no substantial testimony that could be elicited. Ms. Hernandez did not remember any person by the name of 'Baby', and that was a dead end; and it was not ineffective assistance of counsel not to go any further on that."

¶ 21     Following its newly adopted procedure, the trial court individually addressed each of defendant's claims, determining that there was no basis to believe that trial counsel had provided ineffective assistance. The trial court then ruled that there was no basis to continue the *Krankel* inquiry and to appoint counsel to represent defendant on any of his claims. Effectively, the trial court dismissed defendant's claims.

¶ 22     Defendant appealed, and we determined that the trial court improperly allowed the State to actively participate in arguing against defendant's allegations of ineffective assistance, thereby effectively converting what should have been the preliminary *Krankel* inquiry into an adversarial hearing on the merits of defendant's allegations. See generally *Downs I*, 2012 IL App (2d) 100755-U. Thus, we remanded the cause and directed the trial court to appoint counsel to represent defendant on his allegations. *Id.* ¶ 51 ("Accordingly, on remand, the trial court is to return to its initial position, namely, the appointment of a new attorney to represent defendant on his claims of ineffective assistance, and allow that attorney to adopt and flesh out any of defendant's contentions that he or she believes to be indicative of potential neglect, much as the new attorney had already done before the trial court rescinded the appointment."). In providing this direction, we expected that, upon remand, *Krankel* counsel would resubmit the second amended motion and litigate on behalf of defendant the potentially meritorious matters that counsel had already identified. Our expectation, unfortunately, was not met. Finally, in *Downs I*, we did not consider the merits of defendant's allegations; instead, we instructed the court to proceed from the point at which *Krankel* counsel was appointed and to allow counsel to conduct his or her own investigation of defendant's allegations. *Id.* ¶ 52.

¶ 23     On remand, the trial court reappointed the same *Krankel* counsel that it had initially appointed. On October 3, 2012, *Krankel* counsel filed a third amended motion, this time declining to adopt four of the five allegations that he had previously adopted. As relevant here, counsel expressly declined to adopt the bench-trial claim and the alibi claim. Explaining his rejection of the bench-trial claim, *Krankel* counsel stated:

> "Counsel declines to adopt Defendant's #11. Defendant's allegation that 'On first and second day of trial defendant asked (trial) counsel to dismiss the jury and instead continue with a Bench Trial, but counsel ignored defendant' was answered by Trial Counsel's response during the October 28, 2009, hearing. It is clear to *Krankel* counsel from the colloquy found in the October 28th transcript (Exhibit B, page 53 line 18 thru [*sic*] Page 56, line 23) that Defendant's concern was not ignored by trial counsel. Trial Counsel recalls clearly that all discussions with Defendant concerning the matter were resolved with an agreement that waiving jury 'would be a really bad idea.' Defendant acknowledges that once the trial had begun the decision to waive defendant's jury trial right reverts to the discretion of the court (*People v. Zemblidge*, 104 Ill. App. 3d 654

*** (1982)), however, in this case the colloquy reveals that while there was a vigorous discussion concerning the merit of asking the court to dismiss the jury, there is no record nor remembrance by any of the parties involved that the issue was brought to the attention of the Court. The October 28th colloquy establishes that discussion was held between Defendant and Trial Counsel on several occasions, but there is no clear indication that defendant was in such disagreement with his counsel that he insisted that the issue be brought to the attention of the court and the record does not reveal any independent effort by Defendant to do so. Therefore, absent the issue being brought to the attention of the Court for consideration under *Zemblidge*, and no establishment of counsel's failure to address Defendant's concerns, nothing is offered here that indicates anything more than a disagreement with counsel's strategy and tactics in conducting the trial thus failing to establish error under *Strickland*'s first prong."

¶ 24    On his rejection of the alibi claim, *Krankel* counsel stated:

"Counsel declines to adopt Defendant's #4 and offer Patricia Serrano's sworn and notarized statement file stamped September 8, 2009, attached as Exhibit F-1 thru [*sic*] F-3. Trial counsel's responses offered at the hearing on October 28, 2009, inform that he conducted multiple conversations with Ms. Serrano prior to Defendant's trial and at no time did she offer counsel the basis for an alibi defense that could be confirmed. While the Patricia Serrano affidavit signed and dated August 20, 2009, and filed [*sic*] stamped September 8, 2009, may have substance in other venues, nothing is offered by Defendant via the affidavit that a confirmable alibi was asserted to or available to trial counsel prior to the time of trial. The burden falls upon the defendant to show why trial counsel's decision was not sound trial strategy. His decision to not pursue defendant's alibi claim through Patricia Serrano's potential testimony clearly falls into the arena of trial strategy. Defendant offers nothing here that indicates anything more than a disagreement with counsel's strategy and tactics in conducting the trial thus failing to establish error under *Strickland*'s first prong."

¶ 25    *Krankel* counsel also "decline[d] to adopt" defendant's allegations concerning discovery and the coerced, unreviewed stipulations. However, *Krankel* counsel reluctantly incorporated defendant's catch-all allegation of ineffectiveness into the third amended motion:

"[*Krankel*] Counsel is disposed to decline to adopt Defendant's #32 as Defendant's assertion of overall deficient performance by trial counsel is unsupported by specific examples. The burden falls upon the defendant to show why trial counsel's actions were not a product of sound trial strategy or tactic [*sic*]. Defendant offers nothing here that indicates anything more than a disagreement with [trial] counsel's strategy and tactics in conducting the trial and a generalized expression of prejudice. Thus, in counsel's mind Defendant fails to establish error under *Strickland*'s first prong. HOWEVER, in this instance, the best judgment of trial counsel's overall performance lies with the Court which had the ability to observe [trial] counsel throughout the trial. Therefore, '*Krankel* counsel' adopts in part defendant's allegation #32 which states in relevant part: 'In the adversarial process, counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Counsel's deficient performance prejudiced the defense.' "

¶ 26    Thus, in the third amended motion, *Krankel* counsel raised only a general charge of ineffective assistance of trial counsel, and this claim did not allege any specific acts that

constituted neglect or deficient representation. Likewise, the claim did not allege any specific prejudice accruing to defendant.

¶ 27    Also in the third amended motion, *Krankel* counsel explained the procedure he employed in carrying out his assignment. He first briefly outlined what he believed the *Krankel* procedure to be, purportedly relying on *Downs I*. According to *Krankel* counsel, the entire *Krankel* procedure is a three-step process: (1) the trial court reviews the defendant's *pro se* allegations of ineffectiveness of trial counsel, during which review *Krankel* counsel need not be appointed and the trial court may discuss the allegations with the defendant and his or her trial counsel; (2) if, after the initial review, the trial court determines that any of the allegations presents the gist of a concern that trial counsel neglected the defendant's case, a new attorney may be appointed as *Krankel* counsel "to investigate and represent [the] Defendant's claim(s)"; and (3) once *Krankel* counsel has completed his or her investigation, he or she presents the results to the trial court, and then: (a) if *Krankel* counsel has determined that any of the allegations is potentially meritorious, "a hearing will be scheduled to allow [*Krankel*] counsel to serve as [the] Defendant's Adversary [*sic*, presumably *Krankel* counsel meant "Advocate" or "Attorney"]"; or (b) "If no basis for pursuit of [the] Defendant's claim(s) is found, [*Krankel*] counsel should advise [the] court of his/her findings in a form sufficient to allow the Court to issue a ruling on [the] Defendant's allegations."

¶ 28    *Krankel* counsel also averred that, after being reappointed to represent defendant, he modeled his investigation into defendant's *pro se* allegations of ineffectiveness on the Post-Conviction Hearing Act (725 ILCS 122-1 *et seq.* (West 2012)) and Illinois Supreme Court Rule 651 (eff. Apr. 26, 2012). In the third amended motion, *Krankel* counsel averred that he "(1) consulted sufficiently with Defendant to ascertain his allegations of ineffectiveness, (2) has reviewed and considered Defendant's written filings, (3) has examined the trial transcript, and (4) reviewed the transcripts of the hearings held on October 28, 2009, November 25, 2009, and December 28, 2009." The hearings held in October, November, and December 2009 constituted the flawed *Krankel* hearing that was the subject of *Downs I*. *Krankel* counsel placed a clear emphasis on the information derived from the transcripts of that hearing:

> "[T]he information provided by all participants during the hearings became an invaluable resource for this counsel's investigation in preparing the instant motion. Although not sworn, the statements made were offered in open court and thus *Krankel* counsel found them to be reliable with respect to determinations made in the context of this motion."

¶ 29    At an October 19, 2012, hearing before the trial court, defendant contradicted *Krankel* counsel's representations:

> "[Defendant]: On page three of [*Krankel* counsel's] motion, he claims counsel has consulted sufficient[ly] with the defendant to ascertain allegations of ineffectiveness. Counsel has not consulted with me about a single allegation before filing his motion on October 3rd.
>
> * * *
>
> THE COURT: You don't think that [*Krankel* counsel] has conferred with you long enough?
>
> [Defendant]: No, he hasn't spoken to me—I have tried speaking to him already, but he hasn't spoken to me about a single allegation that I have been trying to file. I asked

- 9 -

him to get some affidavits that were unsworn to be sworn, and he hasn't done none [*sic*] of that for me. He hasn't interviewed anybody, any of my alibi witnesses.

THE COURT: What do you wish for me to do?

[Defendant]: Well, after a very brief discussion here with this Court on September 14th, I [told] [*Krankel* counsel] that I wanted to make sure all my issues with trial counsel representation were heard. I informed him that I had other issues that I wanted to be addressed. I told him we need to get the unsworn affidavits notarized or sworn to. [*Krankel* counsel] told me he would be willing to include any issues I wished in my amended motion.

[*Krankel* counsel] sought a continuance under the pretense that he was going to review the transcripts and contact witnesses I believe should have been called to testify at my trial. The continuance was granted, and the case was continued to October 4th.

When it came to court on October 4th, [*Krankel* counsel] completely blindsided me with this motion, and today we are here to argue it. [*Krankel* counsel's] representation this far amounts to no representation at all.

Originally in 2009 [*Krankel* counsel] adopted five of my issues. Now [*Krankel* counsel] seems to adopt only one issue, paragraph 33. I don't see any specifics on [*Krankel* counsel's] part. The language he adopts is real general.

To my knowledge, [*Krankel* counsel] has not contacted any of the witnesses. He has not visited me to discuss my case in length. Further, throughout his motion, he states I failed to sustain my burden. The last time I checked, the purpose of an advocate was to aid the defendant in meeting his burden, something [*Krankel* counsel] has not attempted to do.

\* \* \*

THE COURT: [(speaking directly to *Krankel* counsel)] Do you think that I should continue this case so you can talk to [defendant] to see if there should be more conversation, more review, and more allegations?

[*Krankel* counsel]: No, Your Honor. I believe that when I make the statement that I have consulted with him sufficiently, that means that I have reviewed all of the allegations; and I have done it twice now. I did it once in 2009.

To be honest and fair about this case, I went back through all of the allegations that he raised, both the original filing and the supplementary filing, which you approved sometime later on just before we went into that first hearing, and you rescinded my appointment the first time.

THE COURT: That was because of *People v. Paul Gilmore*. I had you on the case. I got the decision that *Gilmore* says—the *Gilmore* panel sent *Gilmore* back because there was a lawyer, and they said he wasn't supposed to have a lawyer. So I took you out of the case, and then the *Downs* [*I*] panel says where is his lawyer? I am going to listen to [the State], too. You go ahead and tell me.

[*Krankel* counsel]: As I explained in the first filed memo—I didn't include it in the second—basically what I did was I adopted the procedure—since you appointed me, that's clear in *Krankel*, the progeny in *Krankel* [*sic*], that appointing a lawyer to—it says to investigate and present to The Court and represent the defendant.

As an officer of the court, I have an obligation not to bring forth allegations that don't make sense, that don't make sense and don't meet standards. Especially in this case we are talking about *Strickland* standards, the first prong of *Strickland*, and it's well settled that a difference between a client and his trial attorney over tactics and strategies is not sufficient to bring that forward as an allegation of ineffective assistance.

I adopted the procedure. Although it's not required by any *Krankel* progeny or *Krankel* itself, I adopted the procedure that we normally [adopt] at a post conviction hearing, that sort of process. It doesn't specify how much contact I have to have with a client.

With the amount of material, as The Court well knows and I know the State well knows, that he presented to begin with, all the writings, and in addition—in addition I had the full transcript of all three of the hearings in October, November, and December of 2009, and to me that was an incredibly specific and detailed investigative tool, and there is nothing in those transcripts, especially on the four that I declined to proceed with this time that I had not [*sic*] adopted the first time.

There is nothing that I found in those transcripts during that hearing—these were open court statements. He had a chance to respond. So I considered his responses, as well as the responses of trial counsel. None of those were determinative in terms of what I presented here in this third amended motion. I felt like I have examined all of these allegations, and what I am bringing forward I believe is the proper way to proceed.

[Defendant] in our conversations has some issues that may have some substantive weight, but those are considerations for an appeal, not for a *Krankel* hearing, not for an ongoing motion to determine whether or not the trial counsel was ineffective or not, because all of these relate almost entirely to disagreements between him and trial counsel, and I believe that with the transcripts of those hearings that I have enough information to present to [the] court the motion as it is right now."

¶ 30    The trial court then elicited argument about whether to allow defendant to once again represent himself during the *Krankel* hearing on the third amended motion. Apparently, the trial court took defendant's statement that *Krankel* counsel had not spoken with him about filing the third amended motion as another complaint that he had received ineffective assistance, this time from *Krankel* counsel. With this understanding, the trial court ruled:

"I find from what [*Krankel* counsel] has said that he has investigated. He has done extensive investigation. He has had what most lawyers don't have. He has the benefit of being able to review the entire transcript of when all these issues were presented once before. He has got the benefit of reviewing those allegations, reviewing the testimony, and to investigate to see if there is any merit.

I think that he has done a fine job in that regard. He got material that would not be available normally on a hearing of this nature. I have the utmost confidence in his ability. He is provided to you at tax payers' expense outside the budget of the Kane County Public Defender's Office.

So I will proceed today finding that he has done his investigation."

¶ 31    The foregoing colloquy raised the issue of whether, before filing the third amended motion, *Krankel* counsel actually consulted with defendant about his *pro se* allegations of ineffective assistance of trial counsel. When asked to elaborate about the motion's statement that he had consulted with defendant, *Krankel* counsel retrenched and admitted that, rather than speaking with defendant, he reviewed the available transcripts in investigating defendant's *pro se* allegations.

¶ 32    The trial court then had *Krankel* counsel and the State argue the third amended motion. The trial court held that the motion did not support any claim of ineffective assistance of trial counsel, because it did not allege either specific acts of deficient performance or specific examples of prejudice. The motion was denied.

¶ 33    Defendant appealed, and we decided the appeal solely on the jury-question issue. *Downs II*, 2014 IL App (2d) 121156, ¶ 42. Our supreme court reversed our decision on the jury-question issue and remanded the cause to this court, ordering us to consider defendant's *Krankel* issue. *Downs III*, 2015 IL 117934, ¶ 34. We complied and issued our decision in *Downs IV*, in which we concluded that *Krankel* counsel had abdicated his role as counsel, resulting in the presumption of prejudice accruing from counsel's deficient representation. *Downs IV*, 2016 IL App (2d) 121156-B, ¶ 56. The State appealed our judgment in *Downs IV*, and the supreme court denied the State's petition for leave to appeal, but in the exercise of its supervisory authority, it directed us to vacate our opinion in *Downs IV* and to reconsider defendant's arguments in light of *Cherry*, 2016 IL 118728. *People v. Downs*, No. 121100 (Ill. Nov. 23, 2016) (supervisory order).

¶ 34    On December 28, 2016, defendant filed a motion for leave to file a supplemental brief to consider the effect, if any, of *Cherry* on our consideration of his claims. The State had no objection, so long as it was permitted to file a response. We granted defendant's motion and ordered supplemental briefing to consider *Cherry*. Defendant has submitted his supplemental brief, the State has submitted its supplemental response brief, and defendant has submitted his supplemental reply brief.

¶ 35    Therefore, in accord with our supreme court's instructions, we now vacate *Downs IV* and return to the procedural position we were in following *Downs III*: considering defendant's contentions regarding the second *Krankel* hearing, but this time in light of *Cherry*.

## II. ANALYSIS

¶ 37    In this appeal, we consider defendant's claim that *Krankel* counsel provided ineffective assistance. Defendant argues that *Krankel* counsel effectively abdicated his role as defendant's counsel by abandoning all of defendant's specific allegations of ineffective assistance of trial counsel in the third amended motion even though he had adopted four such claims in the second amended motion. Defendant further contends that prejudice may be presumed from the abandonment because it resulted in the failure to subject trial counsel's conduct to any meaningful adversarial testing and effectively deprived him of the benefit of counsel. In our view, the primary issue in this case is whether prejudice may be presumed, as in *Cronic*, or whether defendant must demonstrate prejudice under *Strickland*. To get to that point, we must first consider the contours of proving an ineffective-assistance claim.

A. Ineffective-Assistance Claims and Their Review

¶ 39    Generally, a claim of ineffective assistance of counsel is considered under the familiar *Strickland* standard. *Cherry*, 2016 IL 118728, ¶ 24. Under the *Strickland* standard, in order to prevail on a claim of ineffective assistance, the defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defendant. *Id.* In other words, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* The defendant must satisfy both the deficient-performance and prejudice elements of the *Strickland* standard; if the defendant fails to satisfy either element, he or she cannot prevail on his or her claim. *Id.*

¶ 40    There are, however, certain instances in which prejudice need not be shown, but will be presumed. *Id.* ¶ 25. Prejudice may be presumed where (1) the defendant is denied counsel at a critical stage of the proceedings, (2) counsel entirely fails to subject the State's case[2] to meaningful adversarial testing, or (3) counsel is called upon to represent a client in circumstances under which no lawyer could provide effective assistance. *Id.* In particular, "the second *Cronic* exception applies when 'counsel's effectiveness has fallen to such a low level as to amount not merely to incompetence, but to no representation at all.' " *Id.* ¶ 26 (quoting *People v. Caballero*, 126 Ill. 2d 248, 267 (1989)). However, the circumstances under which prejudice may be presumed occur only rarely. *Id.* For example, discussing the meaningful-adversarial-testing exception, our supreme court identified only two cases in which it found that a defendant successfully invoked the exception. *Id.* ¶¶ 27-28. Thus, our supreme court cautioned that the exception will be successfully invoked only rarely and in extreme circumstances. *Id.* ¶¶ 26-29.

¶ 41    The State suggests that there is no authority for the proposition that the performance of *Krankel* counsel should be subject to a *Strickland* analysis. While it is true that, in his original brief, defendant did not cite any case in which ineffective assistance was alleged against *Krankel* counsel and a *Strickland* analysis was applied, this argument is neither serious nor meritorious. First we note that, in this case, *Krankel* counsel was appointed to represent defendant on a posttrial motion. A posttrial motion has long been held to be a critical part of the criminal proceeding, and, as a result, the defendant is still entitled to constitutionally effective assistance of counsel. See *People v. Abdullah*, 336 Ill. App. 3d 940, 950 (2003) (a posttrial motion is a critical part of the criminal proceeding, to which the defendant's constitutional right to the assistance of counsel attaches). The State cannot maintain any pretense that *Krankel* counsel's performance cannot be subject to the constitutional standards set forth in *Strickland*. On a more pragmatic level, the contention is squarely refuted by *Cherry*, in which our supreme court applied a *Strickland* analysis to a claim of ineffective assistance of *Krankel* counsel. *Cherry*, 2016 IL 118728, ¶¶ 23-33. While we are not sure that this is a serious

---

[2]*Cronic* arose in the context of an allegation that trial counsel was ineffective for failing to subject the State's case to meaningful adversarial testing. Here, the ineffectiveness at issue is on the part of *Krankel* counsel, who was charged with presenting allegations of ineffectiveness of trial counsel. Therefore, in the *Krankel* context, *Krankel* counsel is alleged to have failed to subject *trial counsel's actions* to meaningful adversarial testing, as trial counsel (and no longer the State) is the defendant's true opponent.

contention raised by the State, to the extent that it is, it is without merit.

¶ 42                                    B. The *Krankel* Process

¶ 43     As it has developed, a *Krankel* inquiry proceeds in two stages. In the first stage, the trial court examines the factual bases of the defendant's *pro se* claims of ineffective assistance of trial counsel. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). If, in this preliminary inquiry, the trial court determines that the claims lack merit or pertain only to matters of trial strategy, then it need not appoint new counsel and may deny the defendant's *pro se* motion. *Id.* at 78. If, however, the claims show possible neglect on trial counsel's part, the trial court will appoint new counsel. *Id.* Following the appointment of new counsel (*i.e.*, *Krankel* counsel), the matter proceeds to the second stage of the *Krankel* inquiry. *Id.* The second stage consists of an adversarial and evidentiary hearing on the defendant's claims, and during this hearing the defendant is represented by *Krankel* counsel. *People v. Flemming*, 2015 IL App (1st) 111925-B, ¶ 82.

¶ 44     While the foregoing adequately outlines the overall *Krankel* process, it does not define the obligations of *Krankel* counsel during the second stage of the *Krankel* inquiry. Indeed, the State vigorously argues that *Krankel* counsel's role is to "independently evaluate the defendant's claim." *Moore*, 207 Ill. 2d at 78. This argument is made in service of the entirely appropriate position of supporting the trial court's judgment (and, by consequence, *Krankel* counsel's actions). However, by truncating the relevant passage, the State overlooks the context of *Moore*'s discussion of the *Krankel* process.

¶ 45     *Moore* analyzed the trial court's refusal to consider the defendant's *pro se* allegations of ineffectiveness of trial counsel contained in a motion for the appointment of counsel other than the public defender. *Id.* at 70. In noting that *Krankel* applied to the defendant's *pro se* allegations, *Moore* discussed the overall *Krankel* process:

> "In interpreting *Krankel*, the following rule developed. New counsel is not automatically required in every case in which a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. Rather, when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed. [Citations.] The new counsel would then represent the defendant at the hearing on the defendant's *pro se* claim of ineffective assistance. [Citations.] The appointed counsel can independently evaluate the defendant's claim and would avoid the conflict of interest that trial counsel would experience if trial counsel had to justify his or her actions contrary to [the] defendant's position. [Citations.]" *Id.* at 77-78.

The court then considered the *trial court's* role in conducting the first-stage *Krankel* inquiry. *Id.* at 78-79.

¶ 46     Thus, the context of the passage in *Moore* that the State cites is an explanation of the *trial court's* role, not *Krankel* counsel's role. Further, the interesting part of the passage as it relates to *Krankel* counsel's role is the fact that *Krankel* counsel is appointed to *represent* the defendant in the upcoming adversarial hearing. The State's conception of *Krankel* counsel's role overlooks the fact that counsel has been appointed to represent the defendant and thus

- 14 -

divorces counsel from his or her obligations to the defendant, instead setting him or her up as some sort of investigative arm of the trial court. Thus, according to the State, in this case, *Krankel* counsel simply "independently evaluate[d] the defendant's claim[s]" before "declin[ing] to adopt" any of the specific allegations of ineffective assistance of trial counsel.

¶ 47    However, if we keep in mind that *Krankel* counsel is appointed to represent the defendant at the upcoming second-stage adversarial hearing, we clearly see what the *Moore* court was contemplating when it said that "[t]he appointed counsel can independently evaluate the defendant's claim and would avoid the conflict of interest that trial counsel would experience if trial counsel had to justify his or her actions contrary to [the] defendant's position." Simply, this passage notes that new counsel would face no conflict of interest in presenting the defendant's arguments to the trial court, whereas trial counsel, in attempting to present those same allegations, would face an impermissible conflict of interest. The independent evaluation of the defendant's allegations must be conducted with an eye toward representing the defendant at the upcoming second-stage adversarial hearing, and not simply with the goal of determining whether, in *Krankel* counsel's opinion, any of the defendant's allegations are substantively meritorious. In other words, properly viewed, *Moore* commands that *Krankel* counsel *be an advocate for the defendant, not for the State or the trial court*. Thus, this passage in *Moore*, contrary to the State's argument, does not justify *Krankel* counsel's conduct in this case; at best, it simply does not support *Krankel* counsel's conduct, and at worst, it demonstrates that *Krankel* counsel's conduct was wholly unsupported by law.

¶ 48    That leaves the question of what, precisely, are *Krankel* counsel's obligations once he or she is appointed? *Krankel* counsel correctly noted below, and the State notes on appeal, that any attorney, including *Krankel* counsel, has an ethical obligation not to present a frivolous pleading. Ill. S. Ct. R. 137 (eff. July 1, 2013); Ill. R. Prof'l Conduct 2010 R. 3.1 (eff. Jan. 1, 2010); *People v. Greer*, 212 Ill. 2d 192, 209 (2004). This raises the question of how that ethical obligation harmonizes with *Krankel* counsel's obligation to represent the defendant at the second-stage adversarial hearing.

¶ 49    This can be answered in two parts. The obligation to represent the defendant requires *Krankel* counsel to independently evaluate the defendant's *pro se* allegations of ineffective assistance of trial counsel and present those with merit to the trial court during the second-stage adversarial hearing. What, then, should be the criteria to determine merit? In our view, the criteria flow from the obligation not to present a frivolous pleading.

¶ 50    A frivolous claim is one with no arguable basis in law or in fact. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). Conversely, a nonfrivolous claim will have at least an arguable basis in law or in fact, although it might turn out to be unsuccessful. *People v. Teran*, 376 Ill. App. 3d 1, 2 (2007). In spite of the uncertainty, counsel's obligation to represent the defendant requires him or her to present any nonfrivolous claim to the trial court even where there remains a possibility or even likelihood that the defendant will not prevail on the claim. To place this into the context of a *Krankel* inquiry, *Krankel* counsel must sift through the defendant's *pro se* allegations to determine if any are nonfrivolous and then must present those nonfrivolous claims to the trial court during the second-stage adversarial hearing.

¶ 51    The second part of our answer comes into play if *Krankel* counsel cannot find even a single nonfrivolous allegation of ineffective assistance of trial counsel. In that case, counsel's ethical obligations preclude him or her from presenting any of the allegations at the second-stage adversarial hearing, but he or she is still obligated to represent the defendant. The key to

- 15 -

resolving this conundrum resides in *Greer*. In that case, our supreme court held that counsel was required to seek to withdraw where counsel could not discern any nonfrivolous claims. *Greer*, 212 Ill. 2d at 209. Thus, if, after his or her independent evaluation, *Krankel* counsel is unable to discern any nonfrivolous allegations, he or she should seek permission from the trial court to withdraw from his or her representation of the defendant. *Id.* We further suggest that this procedure should conform to that established in *Anders v. California*, 386 U.S. 738 (1967), in that *Krankel* counsel will accompany the motion requesting permission to withdraw with a memo analyzing the defendant's allegations and explaining why they lack arguable merit. See also *People v. Kuehner*, 2015 IL 117695, ¶ 21 (in postconviction setting, appointed counsel must explain why each of the petitioner's claims is frivolous or patently without merit). In this way, *Krankel* counsel will avoid the sort of problem that occurred in this case. With these principles in mind, we turn to defendant's contentions.

¶ 52                              C. *Krankel* Counsel's Performance

¶ 53        Defendant argues that *Krankel* counsel provided ineffective assistance because, in the third amended motion, he abandoned all of the specific *pro se* allegations of ineffective assistance of trial counsel, including those that he had adopted in the second amended motion, thereby abdicating his responsibility to represent defendant. Defendant argues that the abandonment of the alibi and bench-trial claims constituted deficient performance. Defendant then contends that, under the meaningful-adversarial-testing exception of the *Cronic* analysis, prejudice should be presumed. Alternatively, defendant contends that he was prejudiced by counsel's failure to adopt any specific allegations of ineffective assistance of trial counsel. Defendant concludes that, based on *Krankel* counsel's deficient performance and the presumed prejudice or, alternatively, demonstrated prejudice accruing from it, *Krankel* counsel provided ineffective assistance.

¶ 54        We can easily discern the deficient-performance portion of defendant's claim. As we have discussed, *Moore* suggests that, when *Krankel* counsel is appointed to represent a defendant, he or she has the obligation to present all nonfrivolous claims from the defendant's *pro se* allegations of ineffective assistance of trial counsel. This means that any claim with an arguable basis in law or in fact must be presented. Defendant contends that the alibi and bench-trial claims are two such nonfrivolous claims.

¶ 55        In the alibi claim, defendant alleged that trial counsel did not investigate the existence of the alibi that he was at work at his seasonal employment, as was his wont at that time, during the overnight hours of November 9 and 10, 1996. During the initial preliminary inquiry, trial counsel stated that he had talked with Patricia but that she had nothing concrete, beyond her testimony, to prove up the alibi. Trial counsel also inquired with defendant's then-employer, Borg-Warner, but was informed that defendant's employment records were no longer available. In the third amended motion, *Krankel* counsel concluded that defendant's alibi claim could not succeed at the second-stage hearing, and he chose not to raise it.

¶ 56        The problem here is that Patricia averred that trial counsel had not investigated her alibi information around the time of trial. While the decision to call a witness or to present an alibi defense is a matter of strategy that is generally immune from review, counsel must first investigate the claim. *People v. Brown*, 336 Ill. App. 3d 711, 718 (2002); see also *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994) (an attorney is required to perform a reasonable amount of investigation; "when alibi witnesses are involved, it is unreasonable for counsel not

to try to contact the witnesses" to determine whether their testimony would be helpful to the defense). Thus, defendant raised the clearly potentially meritorious claim that trial counsel had failed to adequately investigate defendant's alibi that he was at work. *Krankel* counsel admitted that he did not consult with defendant, and we further infer that he did not contact Patricia to ascertain whether she had anything that could confirm the alibi, because he indicated that he relied only on transcripts and the court file in preparing the third amended motion. We recognize that trial counsel extensively discussed his investigation at the initial preliminary inquiry. Nevertheless, defendant had presented a nonfrivolous claim, albeit one that might not succeed. It was incumbent upon *Krankel* counsel, therefore, to present the nonfrivolous claim with whatever support he could muster at the second-stage *Krankel* hearing. *Krankel* counsel's failure to specifically present the claim fell below an objective standard of reasonableness.

¶ 57    In contrast, we cannot say that defendant's bench-trial allegation presented a nonfrivolous claim. We note that, after the jury trial commenced, defendant no longer had the right to waive the jury and proceed with a bench trial; rather, the decision was within the trial court's discretion. *Zemblidge*, 104 Ill. App. 3d at 657. Thus, there was no guarantee that, after the jury trial had commenced, the trial court would have granted such a request. It is therefore arguable that whether to pursue defendant's wish to waive the jury became a matter of trial strategy, which is virtually unreviewable in the context of an ineffective-assistance claim. However, this arguability suggests that the claim might be, therefore, nonfrivolous.

¶ 58    Even so, we still cannot say that defendant's bench-trial allegation constituted a nonfrivolous claim. Accepting for the sake of argument that defendant had an unfettered right to inform the trial court that he wished to waive the jury, there is no question that he did not so inform the trial court. When counsel refuses or fails to do so, the defendant is obliged to make his wish to waive the jury known to the trial court. *People v. Powell*, 281 Ill. App. 3d 68, 73 (1996). Despite commenting during the flawed *Krankel* hearing that he was virtually certain that he wanted to convert his jury trial into a bench trial, defendant did not communicate this desire to the trial court. In other words, the record affirmatively rebuts this allegation because defendant had many opportunities throughout the trial to inform the trial court that his trial counsel was refusing to raise his request to waive the jury and proceed from that point with a bench trial. Thus, we cannot say that this claim was nonfrivolous, and *Krankel* counsel's failure to adopt it does not constitute deficient performance.

¶ 59    As a third example of an abandoned claim, we note that defendant alleged in his *pro se* motions that "Baby" told Hernandez that he had seen only one person, Davila, fleeing from the scene of the shooting. Hernandez mentioned the statement to the police, but she was unable or unwilling to give Baby's name to the police. Defendant averred that he informed trial counsel that Baby was Acevedo and that Acevedo had continued to live in the area since the shooting. Trial counsel stated that at the time of trial Hernandez could not recall the statement and could not recall Baby's identity. Further, the police reports provided a dead end. Trial counsel did not comment on whether defendant provided him with Baby's identity. At the initial preliminary inquiry, the trial court dismissed the claim as only a rumor that was a dead end.

¶ 60    In the third amended motion, *Krankel* counsel declined to adopt the allegation because the decision not to call a particular witness was a matter of trial strategy. *Krankel* counsel further reasoned that defendant had failed to overcome his burden of demonstrating why it was not a sound strategic decision and had failed to show either deficient representation or prejudice.

- 17 -

¶ 61    The essence of defendant's allegation was that trial counsel failed to investigate Acevedo's purported statement. According to defendant, he made trial counsel aware of Hernandez's statement to the police. Defendant also provided trial counsel with Baby's identity. According to trial counsel, he never investigated Acevedo, and he was stymied by Hernandez's failure or reluctance to identify Baby so that he could follow up on the purported statement. However, defendant's allegations concerning this claim directly contradict trial counsel's statements and clearly indicate that trial counsel did not investigate a potentially exculpatory witness. Moreover, Acevedo's purported statement contradicts Davila's version of events and supports defendant's.

¶ 62    *Krankel* counsel's decision not to adopt the allegation about Acevedo's purported statement was deficient representation. The allegation on its face indicated that trial counsel had not adequately investigated Acevedo and his purported statement. Trial counsel had Acevedo's identity, and the import of his statement was manifest. Accordingly, the failure to present the allegation is clearly indicative of potential neglect.

¶ 63    With that said, we acknowledge that, in *Downs IV*, we noted that defendant had not raised this claim on appeal, but because the allegation was so obviously nonfrivolous, we believed that it illustrated *Krankel* counsel's deficient performance and that we could appropriately raise the issue *sua sponte*. *Downs IV*, 2016 IL App (2d) 121156-B, ¶¶ 53-54. In its supplemental response brief, the State legitimately chides us for "search[ing] the record for unargued and unbriefed reasons to reverse the trial court's judgment. *People v. Givens*, 237 Ill. 2d 311, 323 (2010)." The State then argues that no prejudice could have occurred because Acevedo was incarcerated at the time of the offense, so he could not have seen anyone fleeing the scene of the offense. The State supports this contention with a printout of Acevedo's Illinois Department of Corrections Offender Custody Report, establishing that Acevedo was incarcerated on January 19, 1994, and remained incarcerated until his June 17, 1998, release on parole. We may take judicial notice of such a report. *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 12 n.3. We therefore conclude that the Baby claim has been factually debunked and is thus without merit.

¶ 64    Nevertheless, the Baby claim very adequately illustrates our point concerning *Krankel* counsel's obligation to present nonfrivolous claims, notwithstanding any misgivings about their probability of success. If the claim had been presented, as it should have been, then the trial court could have evaluated it during the second-stage hearing, and the State could have, and should have, presented the information that Acevedo was incarcerated at the time of the offense. This claim, then, in a nutshell, exemplifies the obligations of *Krankel* counsel and the process that a *Krankel* inquiry should follow.

¶ 65    Based on the above examples, we conclude that *Krankel* counsel provided deficient representation under the first prong of the *Strickland* analysis. The alibi claim alleged that trial counsel did not investigate the alibi. *Krankel* counsel had Patricia's affidavit indicating that defendant had been at work at the time of the offense but he likewise did not fully investigate the claim. This claim should have been presented at the second-stage hearing. The failure to present the claim fell below an objective standard of reasonableness in representing defendant. Likewise, the failure to present the Baby claim constituted deficient representation. However, because the State has factually debunked the claim, and because we have accepted this information (thus bypassing the normal *Krankel* process), there is no need to further press this

claim in any future proceedings. Having found that *Krankel* counsel's representation fell below an objective standard of reasonableness, we now consider prejudice.

¶ 66    As noted above, defendant argues that, under the meaningful-adversarial-testing exception of the *Cronic* analysis, prejudice may be presumed. We agree.

¶ 67    *Krankel* counsel did not just abandon defendant's *pro se* allegations. Instead, *Krankel* counsel composed a lengthy memorandum that usurped both the State's and the trial court's roles in the second-stage hearing. For example, regarding the alibi claim, counsel wrote:

> "Counsel declines to adopt Defendant's #4 and offer Patricia Serrano's sworn and notarized statement file stamped September 8, 2009, attached as Exhibit F-1 thru [*sic*] F-3. Trial counsel's responses offered at the hearing on October 28, 2009, inform that he conducted multiple conversations with Ms. Serrano prior to Defendant's trial and at no time did she offer counsel the basis for an alibi defense that could be confirmed. While the Patricia Serrano affidavit signed and dated August 20, 2009, and filed [*sic*] stamped September 8, 2009, may have substance in other venues, nothing is offered by Defendant via the affidavit that a confirmable alibi was asserted to or available to trial counsel prior to the time of trial. The burden falls upon the defendant to show why trial counsel's decision was not sound trial strategy. His decision to not pursue defendant's alibi claim through Patricia Serrano's potential testimony clearly falls into the arena of trial strategy. Defendant offers nothing here that indicates anything more than a disagreement with counsel's strategy and tactics in conducting the trial thus failing to establish error under *Strickland*'s first prong."

This passage usurped the State's role by presenting argument, not in support of defendant's claim, but *directly against* defendant's claim. Thus, *Krankel* counsel was not acting as an advocate for defendant, but as an advocate for the State. This passage also usurped the trial court's role because it adjudged the claim to be nothing more than a disagreement with trial counsel's strategic choices, which would fail as a claim of ineffective assistance of trial counsel. However, the third amended motion was submitted in conjunction with the second-stage hearing. As we have determined, *Krankel* counsel's obligation at that point was to *represent* defendant. By submitting argument directly inimical to defendant's position, counsel failed to represent defendant. By acting as an auxiliary arm of the trial court, counsel failed to represent defendant. This "representation" effectively constitutes no representation at all. Thus, defendant was effectively deprived of any representation whatsoever.

¶ 68    Accordingly, we hold that *Krankel* counsel failed to subject trial counsel's conduct, according to any of defendant's specific claims, to meaningful adversarial testing. Instead, *Krankel* counsel simply advocated against defendant's interests. By not only abandoning defendant's *pro se* claims against trial counsel, but also directly advocating against them, none of the conduct at issue was actually subjected to any sort of adversarial testing. Thus, defendant has satisfied the meaningful-adversarial-testing exception of the *Cronic* analysis.

¶ 69    We note that *Krankel* counsel did "advocate" the nonspecific catch-all claim of ineffective assistance of trial counsel. This, however, is insufficient to remove *Krankel* counsel's "representation" from the confines of the *Cronic* analysis. Under *Strickland*, which was the standard under which the trial court was to evaluate defendant's claims, the defendant must show both deficient performance and prejudice. *Cherry*, 2016 IL 118728, ¶ 24. The failure to prove either will preclude a finding of ineffective assistance. *Id.* In this case, where *Krankel* counsel abandoned all of defendant's specific claims against trial counsel, there was literally

no way the trial court could have found deficient performance or prejudice. Because *Krankel* counsel presented no specific instance of deficient representation, the trial court could not have found any deficiency, much less any prejudice resulting therefrom. Thus, *Krankel* counsel's presentation of the nonspecific catch-all claim, in actuality, amounted to no representation at all.

¶ 70    Indeed, the catch-all claim, presented with none of the specific allegations, was itself frivolous. If the claim was doomed from the outset, then there was no justification for presenting it. *Krankel* counsel realized this, but rationalized that he was simply throwing defendant upon the trial court's mercy. Instead of arguing against his client, counsel was obligated to move to withdraw if there were no claims that he could ethically present to the trial court at the second-stage hearing. However, counsel chose the worst option of all: abandon nonfrivolous claims and present a frivolous one in their place. (Of course, had counsel retained the nonfrivolous claims, the catch-all claim would not have been frivolous.)

¶ 71    In addition, while *Cherry* cautions against the application of the *Cronic* analysis except in narrowly defined and (hopefully) infrequent circumstances (*id.* ¶ 26), *Krankel* counsel's performance here was so egregiously deficient as to factually distinguish *Cherry*. In *Cherry*, when *Krankel* counsel was appointed, he immediately filed and argued a motion to reconsider the defendant's sentence and also orally argued the defendant's *pro se* claims of ineffective assistance. *Id.* ¶ 29. Our supreme court recognized that, although *Krankel* counsel might have been able to do more to develop and advance the defendant's *pro se* claims, his failure to do more fell into the category of poor representation and not into the category of no representation at all. *Id.*

¶ 72    Here, by contrast, *Krankel* counsel's representation crashed through the category of poor representation and landed squarely in the category of no representation at all. Although *Krankel* counsel wrote a lengthy motion including an outline of his actions, this did not amount to any representation of defendant because, in the motion, counsel not only abandoned defendant's *pro se* allegations against trial counsel but affirmatively argued directly against each and every allegation, including the nonspecific catch-all allegation. Also, *Krankel* counsel did not consult with defendant about his *pro se* allegations. *Krankel* counsel asserted in the third amended motion that he had sufficiently consulted with defendant to ascertain his claims, but defendant contradicted that representation, causing *Krankel* counsel to admit that he did not actually speak with defendant but only reviewed the filings and reports of proceedings from the flawed *Krankel* hearing.[3] Importantly, defendant informed the trial court that he told *Krankel* counsel that he had more issues he wished to raise, but, instead of ascertaining these issues, *Krankel* counsel filed the third amended motion, which argued against each and every issue raised by defendant up to that point. The trial court even offered a

[3]*Krankel* counsel's failure to communicate with defendant illustrates his affirmative abandonment of the obligations of representing defendant, in favor of his mistakenly assumed investigative powers as a sort of adjunct to the trial court. We also note that counsel has a general obligation to communicate with his or her client. Ill. R. Prof'l Conduct 2010 R. 1.4 (eff. Jan. 1, 2016). When *Krankel* counsel undertook to comply with Rule 651(c), he voluntarily undertook the obligations outlined in that rule, which included the requirement to directly communicate with defendant about his allegations and not simply review filings and transcripts. We do not impose any obligation of face-to-face communication, but some direct communication, such as by telephone or mail, was warranted as a result of counsel's position as defendant's advocate.

continuance to allow *Krankel* counsel to consult with defendant, but counsel eschewed the offer and insisted that the hearing go forward. It is apparent, then, that counsel abandoned his duties as defendant's advocate, and his failure to communicate directly with defendant is symptomatic of that abandonment. Thus, *Krankel* counsel's conduct cannot be compared to counsel's representation in *Cherry*, in which counsel actually advocated for his client by filing and arguing a motion to reconsider and arguing all of the defendant's *pro se* allegations.

¶ 73     Moreover, even though *Krankel* counsel here raised defendant's nonspecific catch-all allegation of ineffective assistance, his other failures, along with the fact that the catch-all allegation could not succeed under *Strickland*, rendered his presentation of the catch-all allegation meaningless and, at best, *pro forma*. In this fashion, *Krankel* counsel's performance mirrors that of counsel in *People v. Morris*, 209 Ill. 2d 137 (2004), *overruled in part on other grounds*, *People v. Pitman*, 211 Ill. 2d 502 (2004). In *Morris*, by admitting the defendant's guilt to the jury, counsel appeared to lay the groundwork for a plea of jury nullification based on sympathy or compassion. *Morris*, 209 Ill. 2d at 182-84. This might have passed muster, because a plea for jury nullification has been recognized as a minimal defense. *Id.* at 184. However, such a defense was undermined because counsel not only conceded the defendant's guilt, but also affirmatively introduced evidence of the defendant's involvement in a grisly and unrelated murder, even though the trial court had ruled at counsel's request that the evidence was inadmissible. *Id.* at 184-85. This error was inherently prejudicial to the defendant and it served to negate the minimally acceptable strategy of appealing to the jury's sympathy. *Id.* at 187-88. Our supreme court concluded that these circumstances constituted such a breakdown of the adversarial process in the defendant's trial that no meaningful adversarial testing of the State's case occurred. *Id.* at 188.

¶ 74     Similarly here, by adopting only the nonspecific catch-all allegation, *Krankel* counsel was attempting to throw defendant upon the trial court's mercy. He presented no basis on which the trial court could have determined that trial counsel was ineffective. Instead, *Krankel* counsel was apparently seeking some sort of extralegal remedy and counting upon the trial court to lay aside its obligations, even though counsel had not provided it with any legal justification to do so. While we doubt that this apparent strategy can be deemed even minimally acceptable where the intended audience is not a jury but a judge, *Krankel* counsel, like counsel in *Morris*, compounded his error by directly arguing against defendant's interests. In *Morris*, our supreme court found that a minimally acceptable defense that was undercut by prejudicial error demonstrated that counsel was ineffective, without the need to demonstrate prejudice under *Strickland*. *Id.* Likewise here. *Krankel* counsel's strategy was likely not even minimally acceptable, but his vigorous arguments directly against defendant's *pro se* allegations served to negate that strategy. See *id.* at 187-88. Accordingly, we hold that the meaningful-adversarial-testing exception of the *Cronic* analysis applies here, and thus we need not address whether defendant could show prejudice under a straightforward *Strickland* analysis.

¶ 75     The State argues that *Krankel* counsel was obligated to make an independent investigation and to present only those claims that passed muster. We agree, with an important caveat. *Krankel* counsel first and foremost represents the defendant. If his or her investigation reveals no even potentially meritorious claims, he or she may not simply write a memorandum arguing against these claims and be done with his or her engagement. Rather, counsel must move to withdraw and then explain in a separate memorandum why there are no potentially meritorious

claims. In this fashion, counsel will not violate his or her ethical obligations and will fulfill his or her duty to represent the defendant. See *supra* ¶¶ 43-51.

¶ 76 The State specifically argues that *Krankel* counsel was obligated not to present frivolous claims to the trial court. Again we agree. As we covered the obligations above (see *supra* ¶¶ 43-51), we will not repeat our analysis here.

¶ 77 The State argues that the alibi claim presented only a matter of trial strategy. We agree that certain decisions, such as whether to call a witness and whether to present an alibi defense, are generally matters of trial strategy, largely immune from ineffective-assistance claims. *People v. Enis*, 194 Ill. 2d 361, 378 (2000). However, defendant claimed that the failure to raise the alibi defense and to call the witnesses supporting it was due to trial counsel's failure to investigate. In support, in advance of the second-stage hearing, defendant had procured Patricia's affidavit and Chris's statement, thereby raising a nonfrivolous claim that due to neglect, not strategy, trial counsel did not raise the alibi defense. *Krankel* counsel was therefore obligated to present the claim, notwithstanding the chance that it might not succeed. Accordingly, we cannot accept the State's contention that the alibi claim presented nothing more than a matter of trial strategy.

¶ 78 The State argues that it was defendant's burden to demonstrate why trial counsel's decision was not sound strategy and that defendant failed to carry the burden. We agree that, in making a claim of ineffective assistance, the defendant must show that counsel's performance was deficient and, in so doing, overcome the presumption that counsel's conduct was reasonable. *People v. Rhodes*, 386 Ill. App. 3d 649, 653-54 (2008). However, that is defendant's *ultimate* burden. For purposes of the *Krankel* hearing, defendant overcame his burden by alleging, with evidentiary support, that trial counsel did not investigate the alibi claim, thereby removing counsel's decision from the realm of strategy and placing it into the realm of potential neglect. We therefore reject the State's contention.

¶ 79 The State disputes defendant's contention that *Krankel* counsel failed to conduct a competent and meaningful investigation into defendant's alibi claim. Given our analysis above, whether counsel adequately investigated the alibi claim is of no moment. Even assuming that counsel's investigation was exemplary, his subsequent errors rendered his representation of defendant wholly ineffective. In any event, counsel admitted that he had not communicated with defendant and he did not indicate that he had questioned Patricia. From this, we cannot say that counsel's investigation was adequate.

¶ 80 Turning to the State's supplemental response brief, we note that the State argues that, by submitting a supplemental brief, defendant has somehow abandoned his contentions on appeal for our consideration. The contention is risible. Defendant's supplemental brief was just that, a supplement offering defendant's insight into the effect of *Cherry* on the arguments raised in this appeal. There was no need for defendant to rehash each and every argument already presented. Rather, the supplemental brief should have been limited to the narrow scope of the effect of *Cherry*. We also note that the State significantly exceeded that narrow scope in its supplemental response brief, taking the opportunity to reargue many of the substantive points decided in *Downs IV* and argued in defendant's original briefs on appeal. This was improper. Nevertheless, to some extent, we address these beyond-the-scope arguments.

¶ 81 The State contends that defendant here, like the defendant in *Cherry*, argued only that *Cronic* applied and did not argue that *Krankel* counsel's representation resulted in prejudice under *Strickland*. That might be true with reference only to defendant's supplemental brief, but

defendant's arguments in this matter are presented also in defendant's initial brief on appeal and his reply brief. In any event, in light of our analysis above, even if defendant had not pursued any argument that, under a *Strickland* analysis, he was prejudiced by *Krankel* counsel's deficient representation, he has succeeded in demonstrating that we may presume prejudice under *Cronic*, so the State's contention need not be considered.

¶ 82    The State argues that *Krankel* counsel complied with the limited guidance of *Moore*, 207 Ill. 2d at 78, by simply performing an independent evaluation of defendant's *pro se* allegations. The State contends that, in fact, *Krankel* counsel surpassed his obligations by composing a 15-page, single-spaced third amended motion "explaining why he declined to adopt each of defendant's *pro se* claims." As noted above, we understand that *Krankel* counsel believed that he was acting as an investigatory arm of the trial court rather than solely as defendant's advocate. We believe that counsel acted conscientiously but that, because he was confused about his responsibilities, he failed to harmonize his evaluation with his overarching obligation to represent defendant at the second-stage hearing. *Id.* at 77-78. We reject the State's contention.

¶ 83    The State claims that no authority requires *Krankel* counsel to present any nonfrivolous claim of ineffective assistance of counsel to the trial court during a second-stage hearing. While we agree that no case expressly states this point, as we have demonstrated, it is inferable from the requisites of the attorney-client relationship. Additionally, the State argues that *Strickland* itself does not require counsel to raise all nonfrivolous claims, citing *People v. Tenner*, 175 Ill. 2d 372, 387 (1997). While this might be true, it is *Krankel*, not *Strickland*, that requires the presentation of all nonfrivolous claims. In keeping with an attorney's obligation to represent his or her client, we can expect no less. Plus, *Tenner* is inapposite, as any winnowing of weaker claims undertaken in that case was in the context of presenting an appeal. *Id.* Even in an appeal, the fact that counsel may winnow the weaker arguments does not excuse him or her from providing representation on the major meritorious issue or issues; and, if there are no potentially meritorious issues at all, counsel is required to navigate the *Anders* procedure. Why should *Krankel* counsel be held to a lesser standard than any other attorney? We see no reason, and the State provides no reason.

¶ 84    The State contends that *Krankel* counsel properly considered the flawed *Krankel* hearing "in assessing the merits of defendant's *pro se* allegations," relying on *People v. Jolly*, 2014 IL 117142, ¶ 38. *Jolly* does not support this contention. Rather, it holds that "a preliminary *Krankel* inquiry should operate as a neutral and nonadversarial proceeding. Because a defendant is not appointed new counsel at the preliminary *Krankel* inquiry, it is critical that the State's participation at that proceeding, if any, be *de minimis*." *Id.* It does not discuss *Krankel* counsel's obligations. Thus, the State's argument is unsupported and therefore forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).

¶ 85    The State argues that, after the flawed hearing, the trial court determined that none of defendant's claims indicated potential neglect by trial counsel. This is belied by the record. The trial court appointed *Krankel* counsel because, when reviewing defendant's initial *pro se* allegations, it concluded that they showed potential neglect. It was only after converting the preliminary *Krankel* hearing into a full-blown adversarial hearing on the merits that it concluded that none of defendant's *pro se* allegations were meritorious. The poisoning of the process continued when, instead of presenting any nonfrivolous claims, *Krankel* counsel abandoned all of them, even those that showed potential neglect, in light of the results of the

flawed *Krankel* hearing. In effect, the State attempts to divorce the trial court's initial determination on the merits from the flawed procedure that produced it. We reject the State's contention.

¶ 86    The State argues that *Krankel* counsel was not required to consult with defendant, citing Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). We disagree. Rule 651(c) requires counsel to consult with a defendant in some fashion, either in person, in writing, by phone, or by email, to ascertain the defendant's contentions. The attorney-client relationship also requires some fashion of consultation. Ill. R. Prof'l Conduct R. 1.4 (eff. Jan. 1, 2016). Here, *Krankel* counsel indicated that he did not consult with defendant or conduct any investigation into his *pro se* allegations beyond what had been elicited during the flawed *Krankel* hearing. Indeed, the failure to communicate prevented defendant from supplementing his allegations; defendant told the trial court that he had mentioned to *Krankel* counsel that he wanted to raise additional issues and believed that *Krankel* counsel was amenable to his request, but defendant asserted that he was blindsided by the filing of the third amended motion abandoning his claims and arguing against them. We cannot countenance *Krankel* counsel's conduct or the trial court's acquiescence to it, because it does not comport with the requirements of Rule 651(c) or the obligations imposed by the attorney-client relationship. Accordingly, we reject the notion that *Krankel* counsel was under no obligation to consult with defendant.

¶ 87    The State argues that *Krankel* counsel's evaluation of the alibi claim was reasonable. Because it was nonfrivolous, *Krankel* counsel was required to present the alibi claim to the trial court, not to assess that it had no merit. The ultimate assessment of merit was the trial court's alone; *Krankel* counsel usurped that prerogative by declining to adopt the claim, no matter the reasonableness of his assessment. The point in this appeal is not to adjudicate the merits of defendant's claims, but to determine whether *Krankel* counsel provided constitutionally effective assistance. Where counsel not only abandoned defendant's nonfrivolous claims but also affirmatively argued against defendant's interests, we cannot say that counsel provided effective assistance, no matter how weak the merits of those claims appear. If counsel concluded that the claims were frivolous, his remedy was to follow *Greer* and move to withdraw and submit the necessary document analyzing the insufficiency of the potentially meritorious claims. See *Keuhner*, 2015 IL 117695, ¶ 21. We reject the State's contention.

¶ 88    The State continues, dissecting *Krankel* counsel's actions with respect to the perceived lack of merit of the alibi claim. However, in light of the fact that counsel abandoned the claim and argued directly against defendant's interests, we believe the argument to be ultimately misplaced. We reiterate that, where *Krankel* counsel not only abandoned defendant's nonfrivolous claims but also affirmatively argued against defendant's interests, we cannot say that counsel provided effective assistance, no matter how weak the merits of those claims appear. Further, we note that all the State's arguments are crafted through the lens of a *Strickland* analysis and do not address how the application of presumed prejudice impacts them. Indeed, we believe that it means that defendant was ultimately deprived of the adversarial second-stage *Krankel* hearing to which he was entitled. The remedy must be to give defendant that hearing. Nothing in the State's arguments about the merit of the alibi claim either addresses this issue or changes our mind. Accordingly, we reject the State's contentions.

¶ 89    The State argues that *Krankel* counsel's participation in the second-stage hearing and drafting of the third amended motion are sufficient to place this case into the ambit of *Cherry*. We disagree. The argument overlooks the fact that *Krankel* counsel abandoned any pretense of

representing defendant when he argued against defendant's interests. Thus, the argument does not consider how *Krankel* counsel's actions effectively deprived defendant of counsel during the second-stage *Krankel* hearing and the impact of this effective deprivation on the analysis of defendant's contentions on appeal.

¶ 90 Indeed, this is clearly seen if we focus on what the State's argument overlooks. According to the State, *Krankel* counsel's bare participation was enough to satisfy the obligations of representation along with *Cherry*'s strictures. Left out of the consideration is the fact that *Krankel* counsel did not consult with defendant after leaving defendant with the impression that, when the time came to finalize all of defendant's allegations, he not only would consult but also would include additional allegations of ineffective assistance of trial counsel.[4] It is not surprising, therefore, that defendant complained that he was blindsided by *Krankel* counsel's filing of the third amended motion, in which counsel abandoned all pretense of representing defendant and argued directly against defendant's interests. What is surprising is *Krankel* counsel's transformation from advocate to adversary, perhaps telegraphed in *Krankel* counsel's apparent Freudian slip: "a hearing will be scheduled to allow [*Krankel*] counsel to serve as Defendant's Adversary." Also surprising is the trial court's acquiescence to *Krankel* counsel's actions in exchanging the role of advocate for that of adversary. Perhaps, though, it is not too surprising, given the trial court's continued misunderstanding of *Krankel* and *Krankel* counsel's obligations, along with the paucity of authority explaining those obligations. In short, we emphatically reject any notion that *Krankel* counsel appropriately discharged his obligations in a fashion that, under *Cherry*, would remove our analysis from the rubric of *Cronic*, especially where *Cherry* is predicated upon the active participation of counsel *on the defendant's behalf*, while here *Krankel* counsel's participation was directly inimical to defendant's interests.

¶ 91 The State concludes with the contention that defendant received the hearing to which he was due because "[h]e had counsel" and "[h]is counsel worked on his behalf and presented to the trial court the one claim [that] he felt able to present that was non-frivolous." The fig leaf of the catch-all allegation is transparent. As noted above, once separated from all of the other allegations, the catch-all allegation itself became a frivolous allegation because there was no conceivable legal merit. Thus, while *Krankel* counsel devoted time and effort to the drafting of the third amended motion and his appearance at the second-stage hearing, it was for naught. The third amended motion did not serve and in fact harmed defendant's interests, and at the hearing, counsel undermined even the feeble strategy he pursued in the motion. Accordingly, we reject the State's contention.

¶ 92 In sum, then, defendant has shown that, by failing to present his nonfrivolous claims, *Krankel* counsel provided deficient representation. Defendant has also demonstrated that, by rejecting those nonfrivolous claims and arguing adversely to his interests, *Krankel* counsel failed to subject trial counsel's conduct to any meaningful adversarial testing and thus effectively deprived him of counsel during a critical stage of the proceedings, such that we may presume the existence of prejudice without requiring defendant to demonstrate it. As a result, defendant has successfully demonstrated that *Krankel* counsel provided ineffective assistance,

---

[4]As a result of *Krankel* counsel's abandonment of defendant's allegations of ineffective assistance, we do not, and cannot, know what other issues defendant was planning to raise.

requiring the reversal of the trial court's judgment.

¶ 93                                    III. CONCLUSION

¶ 94        For the foregoing reasons, we hold that *Krankel* counsel provided ineffective assistance, effectively depriving defendant of a proper second-stage *Krankel* hearing. Accordingly, we reverse the judgment of the circuit court of Kane County. We must also remand this cause so that a proper second-stage *Krankel* hearing can be conducted. As we did in *Downs I*, we direct the trial court to appoint an attorney to represent defendant in presenting his claims of ineffective assistance of trial counsel, but we depart from our instruction in *Downs I* and direct the trial court to appoint a different attorney than the attorney who was appointed and appeared for defendant in the proceedings at issue in this appeal. The new attorney shall be allowed to conduct an investigation into defendant's claims of ineffective assistance of trial counsel and is admonished to present any nonfrivolous claims supported by the record or by his or her independent investigation; the trial court shall then hold an appropriate adversarial second-stage *Krankel* hearing on those claims. If he or she finds no such claims, the new attorney should follow *Greer*, 212 Ill. 2d at 209. As we have identified at least one nonfrivolous claim based on the present record, we do not expect that the new attorney shall need to resort to filing a motion to withdraw accompanied by a memorandum explaining why none of the claims have arguable merit, but we do not foreclose that possibility.

¶ 95        Reversed and remanded with directions.